Board of Supervisors of Monroe County *v.* Budlong.

In the case of *Redmond* v. *Pyne*, (1 *Mod.* 19,) the words spoken of a watchmaker were, "He is a bungler, and knows not how to make a good piece of work." After verdict for the plaintiff, the words, on motion in arrest of judgment, were held by the court not to be actionable, not having been laid to be of the plaintiff's trade; but it was said that had the words been, "he knows not how to make a good watch," they would have been actionable.

Upon authority, therefore, words imputing to a mechanic want of skill, or knowledge in his craft, are actionable *per se*, if they are clearly shown to have been spoken with reference to the plaintiff's occupation, and the employment is one requiring peculiar knowledge and skill.

In this respect the authorities recognize no distinction between a learned profession and a mechanical trade, and manifestly, there is none in principle.

In the present case, not only did the words themselves distinctly refer to the plaintiff's trade, but the referee has found the fact that they were spoken of and concerning the plaintiff, and of his occupation as a mason.

The judgment should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, June 1, 1868. *E. D. Smith, Johnson* and *J. C. Smith*, Justices.]

———•••———

THE BOARD OF SUPERVISORS OF THE COUNTY OF MONROE, *vs.*
JOHN L. BUDLONG.

A husband who is ready, able and willing to support his wife, and who gives her no just cause or occasion to abandon him or leave his bed and board, cannot be compelled to support her elsewhere than at his own house or home, if he has one, by any private person, or by the town or county; whether she be sane or insane. His liability for necessaries provided by other persons, for her support, rests entirely upon the ground of his neglect or default.

Board of Supervisors of Monroe County *v.* Budlong.

The certificate of a county judge, given in pursuance of section 26, of the "Act to organize the State Lunatic Asylum," passed April 7, 1842, (*Laws of* 1842, *p.* 141,) as the same has been modified by subsequent statutes, is an adjudication *in rem* upon the subject to which it relates, and is, *it seems, prima facie* evidence of the existence of the facts asserted therein, as against all persons notified to attend the hearing and investigation before such judge.

As the statute does not declare what shall be the force or effect of such certificate as evidence, or whom it shall bind, it must stand upon the same basis with all other judgments or adjudications. It must bind those who were parties and privies to the proceeding, and had an oportunity to litigate the questions involved in such investigation and adjudication. No one else can be bound by it.

If such certificate be *prima facie* evidence of the facts it recites, and affirms or finds, it is not conclusive on a party who has no notice of the proceeding. Such party is entitled to disprove the facts alleged or stated in the certificate upon which the jurisdiction of the judge depended.

The jurisdiction of all courts and officers exercising judicial functions is open to investigation, question and inquiry, whenever their proceedings are set up or sought to be enforced; and when there is no jurisdiction, such proceedings are absolutely void.

It is a fundamental rule of law, and of common justice, that no one shall be concluded by a legal judgment, decision or adjudication had or made in any suit or proceeding to or in which he was not a party or privy, and of which he had no notice; or in respect to which he had no opportunity to defend himself or to litigate the question involved; or upon which his liability depended.

THE defendant is the husband of Clarissa Budlong, with whom he intermarried over thirty years ago. He is a farmer, worth about $8000, and for many years has lived on his farm in the town of Perinton, Monroe county. On the 16th day of June, 1864, the said Clarissa was living at the house of Daniel T. Staples, her son-in-law, in said town, and on that day, the overseers of the poor of said town, made application to Hon. John C. Chumasero, Monroe county judge, alleging that she was a person in indigent circumstances; not a pauper; and had become insane. Thereupon, proceedings concerning her insanity, &c. were taken, and had before said judge, and resulted in an order sending her to the state lunatic asylum at Utica; which order was approved by the trustees of the insane asylum

of the county of Monroe. . On the 17th day of June, aforesaid, the said Clarissa, in pursuance of said order, was received into the asylum at Utica, where she remained until December, 1866, and was then brought to said county asylum, and there remains. . The expense of her maintenance and support at the Utica asylum, was $278.41, which was the current and proper charge for the asylum against the county of Monroe, and the county of Monroe paid the same before the commencement of this action. This action was brought to recover of the defendant the sum so paid. The superintendent of the poor of said county, had full notice of the proceedings before the county judge, but the defendant had no notice thereof.

On the trial, before a justice of this court and a jury, the plaintiffs offered in evidence the following certificate, signed by John C. Chumasero, county judge of Monroe county, of which the following is a copy: " Whereas, application was, this 16th day of June, 1864, duly made to me, by Amos R. Cole and Myron Palmer, overseers of the poor of the town of Perinton, county of Monroe, and state of New York, alleging that Clarissa Budlong, of Perinton aforesaid, a person of indigent circumstances, not a pauper, had become insane ; I did, therefore, in pursuance of title 3, article 2, chapter 20, section 41, part 1, of the Revised Statutes of New York, call two respectable physicians, viz. Thomas B. V. Durand and J. Addison Burrows, both residing in said county of Monroe, and other credible witnesses, viz. Augustus C. Hill and Daniel T. Staples, of Perinton, aforesaid, and did fully investigate the facts of the case without a jury. And I do hereby certify that satisfactory proof was adduced before me, showing that said Clarissa Budlong was insane, and that said insanity occurred within one year from the date hereof; and that her estate is insufficient for her support; and that she is an indigent person, not a pauper, within the provisions of the act aforesaid. I do, therefore, order and direct that

the said Clarissa Budlong be admitted into the state lunatic asylum, at Utica, pursuant to the provisions of the act aforesaid.

Given under my hand at Rochester, this 16th day of June, 1864."

This was accompanied by the certificate of the county clerk that the person signing the same was county judge of Monroe county, and that the signature thereto was genuine.

To the admission of the judge's certificate, the defendant, by his counsel, objected, upon the grounds :

1st. That it was incompetent and immaterial, as against him.

2d. That he was not a party to, or notified of, the proceedings in which it was made.

But the court overruled the objection and admitted the evidence; to which the defendant duly excepted.

The said certificate was then read in evidence by the plaintiff's counsel.

The plaintiff thereupon offered in evidence an instrument in writing, of which the following is a copy :

" STATE OF NEW YORK, }
    *Monroe County*,   } ss.

We, the undersigned, trustees of the Insane Asylum of the county of Monroe, do hereby approve of the certificate of John C. Chumasero, Esq. in the case of Clarissa Budlong; and we do hereby designate the State Lunatic Asylum, as the proper place to which said Clarissa Budlong shall be sent, and do hereby consent to her being sent to that institution.       H. F. MONTGOMERY,

Dated June 16th, 1864.       E. M. PARSONS."

To the admission of which the defendant, by his counsel, objected, on the same grounds as those above stated in reference to the judge's certificate.

The court overruled the objection and admitted the evidence, and the defendant excepted.

The said writing was then read in evidence by the plaintiffs' counsel. The plaintiffs then offered to prove by a witness that the defendant and Clarissa Budlong were husband and wife; and that in pursuance of the county judge's certificate, the said Clarissa was received into the insane asylum at Utica, on the 17th of June, 1864; and that the charges for her care and maintenance thereat, with interest on the several sums from the time of the payment thereof to the present time, were $278.41; and that the same had been paid by the plaintiffs before the commencement of this action. To this the defendant, by his counsel, objected upon the ground that it was immaterial. But the court overruled the objection and the defendant duly excepted. They also proved by the superintendent of the poor of the county of Monroe, that he received notice of examination of Mrs. Budlong, touching her insanity, before Judge Chumasero; it was the usual notice; he thought it was in writing.

Here a statement was read in evidence to the effect that the charges paid by the plaintiffs, to the amount of $278.41, including interest, were correct and proper charges for the asylum against the plaintiffs, and were the regular and lawful charges.

Thereupon the plaintiffs rested.

The defendant then moved for a nonsuit, and that the complaint herein be dismissed, upon the following grounds:

1st. That the plaintiffs had made out no cause of action against the defendant.

2d. That no notice of the proceedings before the county judge, upon which he had granted the certificate, had been given to the defendant.

3d. That the said certificate was void, because it did not state that the said Clarissa became insane within one year next previous to the date thereof, nor did it state that satisfactory proof had been adduced before him that she had

become insane within one year next prior to the date of his certificate.

4th. That the defendant was not liable for the expenses incurred, for the reason,

1. That the act of 1842, chapter 135, does not apply to the husband of an insane wife.

2. That no proceedings had been taken to render the husband liable under any statute.

3. That he was not liable at common law. No evidence having been given that the defendant had, at any time, refused or neglected to provide for his wife; or of his inability to do so; or that the plaintiff had advanced any money or necessaries upon his credit.

The court denied the motion and the defendant's counsel excepted. The defendant then offered to prove,

1st. That the said Clarissa did not become insane within one year prior to the date of the certificate. 2d. That she was not at the time of the granting of said certificate, or at any time prior thereto, in indigent circumstances, nor a pauper. 3d. That she had at that time and at all times since, a separate property, sufficient for her maintenance and support. 4th. That the defendant was at all times, before and since said certificate and the application therein referred to, able, ready and willing to support and maintain the said Clarissa and take care of her in sickness and in health. 5th. That prior to such application in said certificate referred to, and on or about the first day of April, 1860, the said Clarissa left his house without his consent and against his wishes and remonstrance, and without any cause or provocation, and went to reside at the residence of her son, by a former husband, where she continued to reside until taken to the insane asylum. That she refused to return to him. 6th. That the said son was of abundant pecuniary ability at the time of such removal, and at all times within five years past, to support and maintain the said Clarissa. 7th. That the defendant has, at all times,

Board of Supervisors of Monroe County v. Budlong.

been able and willing to provide for and keep the said Clarissa, whether sane or insane, at his own house. 8th. That no notice was ever given to the defendant, or request made to him, to take care of or provide for his wife, or maintain her. 9th. That he never refused, or declined, or omitted to do so. The court excluded each branch of the evidence, and the defendant excepted, separately to each decision.

The defendant then offered to prove, as a whole, the several facts above singly presented; but the court held and decided that such evidence was inadmissible and excluded the same, to which decision the defendant duly excepted.

It was admitted by the defendant that if the plaintiffs were entitled to recover it should be the sum of $278.41.

The court thereupon directed the jury to find a verdict for the plaintiff, for the amount above stated, and they thereupon rendered a verdict in favor of the plaintiffs and against the defendant, for the sum of $278.41; and the court directed the exceptions above stated to be heard in the first instance, at the general term. The plaintiffs to have leave to enter judgment, to stand in the meantime as security.

*D. C. Hyde,* for the plaintiff. I. It was competent for the legislature to provide means for the custody, maintenance and restoration to soundness of mind of all citizens of the state laboring under the visitation of insanity, and to make liable for reimbursement to the county for expenses in the asylum, such relatives as were bound to support them when *out* of the asylum. This was not disputed on the trial. The organic act was passed in 1842, and is entitled "An act to organize the state lunatic asylum and *more effectually* to provide for the care, *maintenance* and *recovery* of the insane." (2 *R. S. art.* 2, *title* 2, *ch.* 20.) An examination of the whole act is necessary to a proper

understanding of the questions involved in this case. [This examination is omitted.]

II. It was not the intention of the legislature, that the relatives or friends of that class of insane, contemplated by the 26th and 43d sections, should be *notified* of the application to the judge. If the legislature had so intended it would have provided for it, and the time and manner of such notice. Instead of this, we find that notice is to be given to a public officer, who represents all the people of the county in his official position, and the county is the only party liable to the asylum in cases of this kind. For the purposes of the county and asylum, no other notice was necessary or pertinent. The legislature did not intend that a relative liable for the support of the lunatic, should in any manner be allowed to appear as a *party*, or have a greater voice in the question to be *decided* than the witnesses or neighbors. If it had it would have said so. But, on the contrary, the mode and manner of the whole proceeding is pointed out, and no such party or interference is contemplated. The policy of the law is to investigate the case by competent evidence, and, if made out, to send the lunatic to an institution, prepared, at great expense, by the state, for the restoration of his mind, whether his relatives, or even himself, be *willing* or *unwilling*. The choice and opinion of relatives, have been wisely unprovided for, as the appellant's conduct in this case shows. The legal liability of the county was fixed, and it paid, and it now brings its action to recover for the money paid, of which the defendant has full notice; he has his day in court, and among other things pleads a denial and a divorce. Did the legislature intend that the order of the judge, duly authenticated, should be *conclusive* evidence of the facts therein recited? It would seem so; for that is made the authority on which to receive the patient. The language (§ 26) is imperative, that he *shall* be admitted on such order, and *shall* be supported *at the*

*expense of the county.* No other or additional evidence is specified. It is the result of the investigation, and is the *highest evidence* that could, in the nature of the case, be produced. *It is the original order itself.* It is a warrant. The asylum cannot go behind the order and deny or qualify it. The steward has no discretion as to whom he shall charge for the support. He can charge only to the county from which the patient is sent. The treasurer of the county has no discretion as to whether he will pay the bills sent him by the treasurer, nor the supervisors, as to whether they will assess and levy the tax. The certificates of the county clerk and the trustees of the insane asylum of the county of Monroe, were both, competent and material evidence, provided the judge's order was competent; the former by the terms of the act aforesaid, and the latter by statute relating to the county asylum. They, also, are the highest evidence of the facts therein stated. This is too plain for argument.

III. The grounds of the motion for a nonsuit were not well taken, because: 1. A cause of action was made out. 2. No notice of the proceedings to the defendant was necessary, as before shown. 3. The statute nowhere requires that the certificate of the judge should state "*in hæc verba*" that the lunatic became insane within one year next previous to the date thereof. The 26th and 43d sections contain all the requirements on that subject. The 41st section requires that he should certify that satisfactory *proof* has been adduced, showing the person insane; and the 43d, that *satisfactory proof* has been adduced that he became insane within a year next prior to the date of the certificate. The *evidence* of insanity and the period thereof, is the *satisfactory proof referred to.* No other certificate of either of those facts is required; and the judge's certificate is full and clear on those points. 4. The defendant is liable, and the act of 1842, *does* apply to him. The defendant as *husband* was bound to support his wife

*out* of the asylum when *insane*, as well as when *sane*. No exception is made in favor of the husband. Any person bound to support the insane if *not* sent to the asylum, is bound to pay the county what it had to pay for support while *in* the asylum (§§ 36 and 37.) The 36th section as *applied* to *this* case, *means* bound to pay the county, as no *relative* or *lunatic* sent by the judge is liable to the *asylum* at all. All the statutory proceedings necessary to render the husband liable, (to the county,) were taken. He was liable at common law for her support, when out of the asylum whether sane or insane, and if insane her absence from his house *would not excuse*. Whether the defendant had neglected or refused to provide for her, or whether he was able, or the fact that the county did not advance or pay upon his credit, were matters of no importance. The wife was insane, having no judgment, volition, or moral responsibility; and the common law rules in relation to the liability of the husband, are not so monstrous as to bind him for support when she least needs it, and absolve him when she most needs it. Here was a necessity for which the husband could not provide. The state undertook it and made the several counties liable in the first instance, with a remedy over against the husband. It was a high necessity, infinitely above all merely animal wants. Was not this in effect an application of the husband's common law liability for a new want? What are to be deemed necessaries, must depend upon the degree of civilization. It is high time the law should raise its standard as the age is already a century in advance of it. But the husband was not notified of the proceedings. What if he had been? Could he build an asylum in a day, and meet the necessity? It is an idea descended from barbarism that the wife is his servant or slave, and cannot be cared for at his expense in so great an exigency, without notice to him. Suppose he had been in California, or unknown. Are the rights of a whole people to be suspended until he

appears. In different proceedings, and by other statutes where notice is provided for, the notice is given to the party primarily liable, but, in this the defendant is not primarily liable.

IV. The first, second and third offers of the defendant were properly excluded. The judge's certificate was conclusive evidence on all those points. If it was open to contradiction in one respect, it was in all; and the question of insanity, *itself*, might have been tried and a verdict rendered against the certificate, even though it had been founded on the *verdict of a jury* before the judge. The offers numbered from four to nine were each and all properly excluded, if the foregoing views of the policy of the law are correct.

V. The design and meaning of the act is that an application to the judge may be made by any one, and an investigation of the question of insanity be had without notice to any person, except the officers therein named, and if the person, on whose behalf the application is made, be an indigent insane, not a pauper, and such insanity has occurred within one year next prior to the application, such person may be sent to the asylum at the expense of the county; and any person liable to support the patient out of the asylum, shall be liable to reimburse the county for the lawful expenses paid by it on account of the patient while in the asylum; the limited period fixed by law. By the act of 1842, the legislature recognized the fact that the asylum was a necessity of modern civilization, and knowing that no individual could provide the requisite means at home, gave the county the right to reimburse itself from the relative liable for the patient's support, as fully and completely as though the necessity had been food, clothing or medical attendance. It merely recognized the fact that the mind is as precious as the body; and, that a claim for the restoration of deranged intellect, is as good as a claim for bread. It did not rise

above the actual wants, or the average intelligence of the age. It did not infringe individual rights, any more than the law relating to the persons and estates of drunkards and idiots, or the sanitary laws. It conceived the rational idea, that a part of the insane might be cured, and that a proper place was a necessity. The course of proceeding is and ought to be summary, simple and efficient, and is not void, merely because the husband is not notified of the first step, or made a party to it. The liability of and payment by the county is only one of the conditions of his liability to the county. The defendant may show that he is not a relative, that he is a divorced husband; that he is not a relative of that degree who is liable; he may deny payment and many other things. He is not made liable except by a judgment, and by *due course* of law. The overseers of the poor of the town, had notice as well as the county superintendent. The defendant would have been liable to the town, if the town was liable for support, had the town furnished it without notice. They are not required to give notice before they give relief. The defendant on the trial did not claim that the act of 1842 was unconstitutional or void in any of its parts, but that the proceedings were inoperative as to him for want of notice. This is a mistake. If the act is unjust, (which we deny,) redress may be had in a proper tribunal, but notice in such case can never be required by a court, except upon the principle of judicial legislation.

*Geo. F. Danforth,* for the defendant. I. The court erred in denying the defendant's motion for a nonsuit. The plaintiffs had made out no cause of action. 1. There was no pretense that any liability was established at common law. 2. The complaint and course of trial shows that the plaintiffs' claim to recover was placed upon the provisions of the *act of* 1842, *ch.* 135, and that of 1850, *ch.* 282, and especially sections 26 and 36 of the first act, and section

2 of the act of 1850. But the action cannot be sustained by them. Those statutes embrace, within their provisions, (so far as this case is concerned,) only "*indigent persons, not paupers.*" (*Act of* 1842, *ch.* 135. *Act of* 1850, *ch.* 282.) Clarissa Budlong was not of this class. As wife, she partook of the estate of the husband, his whole estate being chargeable with her support. *Norton, &c.* v. *Rhodes,* (18 *Barb.* 100,) was an action by superintendants of the poor against a husband. He had maltreated her and expelled her from his house without just cause; he refused to provide for her, though of sufficient ability to do so. The plaintiffs regarding her as a pauper, had furnished her with "boarding, clothing and medical aid," and then sued the husband. A justice of the peace had given them a judgment. The county court reversed it. The Supreme Court, eighth district, at general term sustained the county court. MARVIN, J. saying: "In my opinion there is no principle upon which this action can be sustained."

In the case before the court, the complaint alleges that the husband, this defendant, "*at the* time of such apprehension of his wife, was, ever since has been, and now is, a man of considerble means, and abundantly able to support and maintain his said wife. The answer states also, that, "At the time and times when the said board, maintenance, support, goods and merchandise, and other articles were furnished the said Clarissa Budlong, and expenses incurred on her account, as stated in said complaint, this defendant was a householder in the town of Perinton, in said county, and was amply provided with the means and conveniences to maintain and support the said Clarissa in a manner suitable to her condition, and was ready and willing so to do." And upon the trial, the plaintiff proved, by Mr. Hill, who was the son of Clarissa, and had known the defendant for thirty years, that during all this period he was "worth about $8000," having a farm which he carried on, and where he lived. This fact,

established by the record and by proof, shows: That the
county judge had no jurisdiction; that the plaintiffs'
claim was destitute even of an apparent foundation; and
no other evidence was introduced which had a tendency
even to charge the defendant. The plaintiff relied upon
the certificate of the county judge, and the certificate of
the trustees of the Monroe county insane asylum. 3. These
certificates have no force other than that given to them by
the statute, and must be confined in their operation and
effect to the special purposes contemplated by the law
authorizing them. This purpose is to entitle her to
admission into the asylum to be supported there at the
expense of the county, not exceeding two years, (§ 26,
*p.* 148, *Laws of* 1842,) and enables the officers of the
asylum to collect of the county such expense. (§ 37, *id.*
*p.* 150.) They are not made evidence, and cannot be
used as such for the purpose of establishing the liability
of a person not a party to the proceedings of which they
form a part. (1 *Wash. C. C. Rep.* 216. *Wheeler* v. *Farm-
ingham,* 12 *Cush.* 337.) "It is a most obvious principle of
justice that no man ought to be bound by proceedings to
which he was a stranger." (1 *Greenl. Ev.* § 522.) At
most they could be received only to show that what the
plaintiffs had paid, they paid in pursuance of a valid
claim by the asylum, or to fix the amount of damages
after the liability had been otherwise established. (*Bur-
rell* v. *West,* 2 *N. H. Rep.* 190, 192, 193.) But they cannot
prove the facts upon which the certificates were
founded. (*Sanders* v. *Hamilton,* 2 *Hayes,* 282. 2 *Starkie
on Ev.* 183, 184. 2 *Cowen & Hill's Notes, p.* 821. *Beal* v.
*Beck,* 3 *Har. & McHenry,* 242. *Drummond* v. *Pressman,* 12
*Wheat.* 528. *Clark* v. *Montgomery,* 23 *Barb.* 464, 471.)
Even when one has the right of recovery over, secured to
him, either by express contract or by operation of law, the
judgment against him is of no avail, unless he has given
notice of the suit to the person so responsible. (2 *Cowen*

Board of Supervisors of Monroe County *v.* Budlong.

*& Hill's Notes, pp.* 817, 818.) Notice of some kind must be given. In *Kilburn* v. *Woodworth*, (5 *John.* 39,) which was an action of debt, upon judgment, the court say, "To bind a defendant personally by a judgment when he was never personally summoned or had notice of the proceeding, would be contrary to the first principles of justice."

In *The People* v. *Soper*, (7 *N. Y. Rep.* 431,) the Court of Appeals say, "There is nothing which our law denounces more explicitly than an adjudication of the rights of a party without offering him an opportunity of being heard in his defense." In *White* v. *Evans*, (47 *Barb.* 179,) a record had been introduced to which the plaintiff was not a party. Upon appeal, the court say, "He," the opposite party, "offered a judgment record in evidence. The plaintiff in every suitable form objected to its admissibility and its sufficiency as evidence against him, substantially upon the ground that he was not a party to it or affected by its contents; and this is an elementary principle; he was neither a party nor a privy thereto. It is said he could not be a proper party thereto. This may be, and what then? Why, that the defendant, *if he found it necessary to prove certain facts* alleged in that record, must prove them by original and independent evidence. The record was, therefore, either improperly admitted as evidence, or pronounced to be sufficient evidence against the plaintiff." So in a proceeding under the poor law, (*Adams* v. *Oaks*, 20 *John.* 280,) the court say: "In directing the distress warrant to issue in such a case against the overseer of the town properly chargeable, the statute is silent as to previous notice by summons; but on common law principles, such notice is held to be necessary before the overseer can be personally charged by process in the nature of an execution."

II. The plaintiffs did not establish that the defendant was "legally liable" for the support of his wife at the asylum,

as required by section 36 of the act of 1842, and section 2 of the act of 1850.

1. These sections must be construed in connection with other statutes relating to the same general subject, viz: Revised Statutes, chapter 20, entitled "Of the Internal Police of the state," part 1, title 1, entitled "Of the Relief and Support of Indigent Persons," page 565; title 3, of the same chapter, entitled "Of the Safe Keeping and Care of Lunatics," page 634. Chapter 135 of laws of 1842, above referred to, is entitled "An act to organize the State Lunatic Asylum and more effectually to provide for the care, maintenance and recovery of the insane," page 141, and chapter 282 of the Laws of 1850, is entitled "An act in relation to the State Lunatic Asylum," page 619. These are, as believed, all the statutes which have any bearing upon the question at issue; and in none can any authority be discovered for the present action. Sections 4 and 13, of part 1, title 3, chapter 20, Revised Statutes, extended the remedies in favor of the overseers of the poor against the committee of the estate of the lunatic; and section four permitted the overseers, in default of the relatives or committee to care for the insane person, "to confine him in the county poor house, or in any public or private asylum approved by the supervisors." This was the whole statute law touching the duties and the liability of any person for the care of the insane, as it stood previous to the act of 1842, chapter 135, above cited. The certificate recites that the judge in granting the certificate acted under chapter 20, title 3, but it was not authorized by it. The act of 1842 organized the State Lunatic Asylum at Utica, and by section 20, the provision last cited, in section 4 of title 3, chapter 20, was so modified that in cases provided for by title 3, above cited, no insane person could be confined in any place by order of the overseers, except this asylum, "or such public or private asylum, as the supervisors should direct," in effect, prohibiting confinement in the

county poor house. By the same section, superintendents and overseers of the poor are required to see that this provision is carried into effect, " as well in case the lunatic or his relatives are of sufficient ability to defray the expenses, as in case of a pauper." It cannot be claimed that in any respect, the provisions thus far cited, lend any strength to the plaintiffs' case. The provisions of the act of 1842, only supplement the provisions of the Revised Statutes upon this subject. Under these statutes certain persons, called relatives, may be charged with the expenses of the care and maintenance of the insane person. Those relatives do not include a husband. " A husband," says Lord Loughborough, "is not of kin to the wife, nor she to him." (3 *Vesey,* 247. *Pomeroy* v. *Wells,* 8 *Paige,* 410.) But those named and chargeable, can only be made liable by legal proceedings, taken upon notice to them by the overseers of the poor.

The remaining inquiry, upon this branch of the subject is whether there are other provisions of the law which make a person, not so named, liable—and make him liable without legal proceedings and without notice. Section 25 of the act of 1842, permits each county to have one, and upon certain contingencies, more than one " indigent insane person in the asylum, whose disease at the time of admission was the first attack and did not exceed six months"—such patients to be designated by the superintendents of the poor. Section 26 indicates the proceedings necessary to procure the admission of this class of persons, viz : Application in his behalf to the first judge of the county ; a trial with or without a jury ; a certificate; whereupon the supervisors are to provide for his expenses.

By the act of 1850, chapter 282, page 619, section 2, it is provided that " no person in indigent circumstances, not a pauper, shall be admitted into the asylum on the certificate of a county judge, made under section 26, of the act of 1842, unless such person has become insane within one

year prior to the granting of such certificate." The proceeding ·before him is to be upon˙ notice. It is made the duty of the county judge, upon an application under the 26th section, to cause reasonable notice thereof, and of the time and place of hearing the same, to be given to one of the·superintendents of the poor of the county chargeable with the expense of supporting such person in the asylum, if admitted. Or if such expense is chargeable to a town or city, then to an overseer of the poor of such town or city, as he may judge reasonable under the circumstances. He shall then proceed to inquire as to the time when such person became insane, and shall, in addition to the requirements of the 26th section of the act of 1842, state in his certificate that satisfactory proof has been adduced before him that such person became insane within a year next prior to the date of his certificate. Section 36 provides for payment of the expenses of the lunatic in the first place by the county, and then adds: "Said county, however, shall have the right to require any individual, town, city or county that is legally liable for the support of such patient, to reimburse the amount of said bills with interest."

2. The liability here referred to is in terms "legal liability," and means one established by some adjudication, as under the Revised Statutes the liability of a relative or a committee after notice and an opportunity to be heard before a court of sessions, .or that of a town or city whose overseer of the poor, had under section 2, of the act of 1850, been notified of the proceedings before the county judge, or perhaps that of an "individual" who had been notified under section 2, of title 1, chapter 20, before cited. The acts of 1842, and of 1850, so far as the sections in question are concerned, are amendatory of title 3, chapter 20, part 1, Revised Statutes, (*vol.* 1, 634.) They are *in pari materia*, and are so considered in *Perkins* v. *Mitchell*, (31 *Barb*, 472.) The "individual" referred to in section 37, act of 1842, is the "individual" referred to in section 2, title 1, part 1,

chapter 20, page 566, volume 1, Revised Statutes, and introduced by adoption into section 3, title 3, page 487, volume 1, Revised Statutes; and so understood, the whole series of statutes become coherent and just, for that individual has fourteen days' notice of proceedings "to compel him to maintain such mad "person." Thus the letter and spirit of the law will be satisfied. If it means any other individual than one entitled to such notice, the act is so far invalid. The act should, if practicable, be so construed that it will not violate any constitutional provision, or any common principle of justice. (*Denio, J.* 18 *N. Y. Rep.* 213.) The construction contended for, prevents such violation. If the intention of the legislature had been to extend liability to a class not already by statute subjected to the duty, or to introduce a class to be made liable without the proceedings which protected those already enumerated, it is reasonable to presume such intention would have been expressed in clear and unmistakable language. No such intention appears either expressly or by implication. If, however, this position is deemed erroneous, the words "*legal* liability" could only be satisfied by a common law liability made out by appropriate evidence of (1.) A contract; or (2.) A refusal or neglect to perform some duty. In no other way could a cause of action accrue against the defendant, or he become legally liable.

3. There was no legal liability on the part of the defendant to support his wife at the Insane Asylum, or privity of contract between himself and the plaintiff. He was entitled to her custody. It did not appear that he had ever refused or neglected to provide for her; or that he was unable or unwilling to do so. The duty did not exist on the part of the defendant to place his wife in the lunatic asylum. His omission to do so, therefore, does not place the plaintiffs in the condition of one who renders a service for another's benefit. The statute does not require a husband to place his wife in a lunatic asylum. Nor does it authorize

the commitment of a wife to such asylum without her husband's consent. It must be considered as settled, that the husband is bound only to make suitable provision for his wife at his own house, and if she willfully abandons him, she carries with her no credit of the husband, and can impose on him no liability. Nor is he bound to make provision for her elsewhere. (2 *Kent's Com.* 146, *4th ed. Cromwell* v. *Benjamin,* 41 *Barb.* 560. *Pomeroy* v. *Wells,* 8 *Paige,* 406. *McGahay* v. *Williams,* 12 *John.* 292. *McCutchen* v. *McGahay,* 11 *id.* 280. *Blowers* v. *Sturtevant,* 4 *Denio,* 47.) To render the defendant legally liable—if the plaintiffs could in any event recover—they must make out a case within the above principle. If they failed to show the husband in default, then they could not recover. (18 *Barb.* 101.) Or, assuming that the statute in question can, under any circumstances, be made applicable to a husband, it can only be after notice ; and as to necessity, the above authorities and the principle which they recognize, are decisive.

4. The certificate was void, because it did not conform to the statute. (*Laws of* 1850, *ch.* 52, *p.* 619.) It did not appear that the said Clarissa " had become insane within one year next prior to the granting of such certificate." That was a jurisdictional question—no other person, however insane, could be made the subject of such an investigation. Nor does his certificate state that satisfactory proof had been adduced before him that " she became insane within a year next prior to the date of his certificate." It reads, " Clarissa Budlong was insane, and that said insanity occurred within one year from the date hereof." This certificate may be true, and Mrs. Budlong have been insane for five or ten years. " Said insanity " is satisfied by a new development within the year; but the statute means a first attack, or beginning of derangement. The language of the statute must be strictly followed. In *Fitch* v. *Commissioners, &c. of Kirkland,* (22 *Wend.* 135,) the court say : " When a statute prescribes the form, the very words

of an order or other necessary proceeding thereunder, must be used."

III. The evidence offered by the defendant should have -been received. It would, if received, have established: (1.) "That Clarissa did not become insane within one year from the date of the certificate. (2.) That she was not in indigent circumstances. (3.) But, on the contrary, then had a separate property sufficient for her maintenance and support." These facts would have established that *she* was not within the statute, nor the object of its charity; and that over her the county judge had no jurisdiction. (4 and 7.) "That the defendant then was, and at all times had been, able, ready and willing to support and maintain her in sickness and in health, and to provide for and keep her, whether sane or insane, at his own house. (5.) That prior to the application referred to in said certificate, and on or about April 1st, 1853, she left his house without his consent and against his wishes and remonstrance, and without any cause or provocation went to reside at the residence of a son by a former husband, where she continued to reside until taken to the insane asylum. That she refused to return to him. (6.) That the son with whom the said Clarissa was living at the time of the application to the county judge, was of abundant pecuniary ability to support and maintain her." This would have shown a *relative*, liable, within the statute. (7.) "That no notice was ever given to the defendant, or request made to him to take care of, or provide for his wife, or maintain her. That he never refused, or declined, or omitted to do so." These facts would have established an entire absence of liability under the statute above referred to. The result of the rulings above complained of was: (*a.*) The defendant was condemned in a proceeding of which he had no notice, without a trial, without evidence, and without an opportunity for defense. (*b.*) He was held liable for the

support of a wife who had voluntarily eloped from him, and for whom he had made abundant provision in his own house. There is nothing in the law which affords a pretense or shadow of excuse for such injustice.

*By the Court,* E. DARWIN SMITH, J. Upon the evidence given at the trial, and that offered by the defendant and excluded, it is difficult to see upon what principle the verdict for the plaintiff can be sustained.

Upon such evidence, assuming that the defendant could have proved what he offered, it appears that the defendant's wife, prior to April 1, 1860, without cause and without consent on his part, and against his remonstrance, deserted his bed and board and went to live with her children by a former husband, and continued thereafter to live with said children, one after another, till she was taken to the insane asylum, on or about the 17th day of June, 1864; that her husband was a man of property, worth at least $8000, and at all times willing to provide for and support her in a suitable manner, at his own house or in the insane asylum, if it were necessary or fit that she should be sent to any such asylum.

How, under such circumstances, he can be made responsible in this action for her support in the insane asylum, I cannot conceive.

These facts show that she was not a proper subject for the exercise of the power of the county judge to execute the certificate prescribed in and by section 26 of the act to organize the State Lunatic Asylum, passed April 7, 1842, as the same has been since modified by subsequent statutes.

This certificate is an adjudication *in rem* upon the subject to which it relates, and is probably *prima facie evidence* of the existence of the facts asserted therein, as against all persons notified to attend the hearing and investigation before such judge.

The county, through the superintendent of the poor,

Board of Supervisors of Monroe County *v.* Budlong.

the overseers of the poor of the town of Perrinton, and the sons-in-law of the lunatic, (Hill and Staples,) having been duly notified to attend such investigation and actually appearing before the judge on such hearing, would be concluded by such certificates. They, or either of them, if dissatisfied with it, might have brought a certiorari to this court to review and reverse the same.

The statute does not declare what shall be the force or effect of such certificate as evidence, or whom it shall bind, and it must, therefore, stand upon the same basis with all other judgments or adjudications. It must bind those who were parties and privies, to the proceding, and had an opportunity to litigate the questions involved in such investigation and adjudication. No one else can be bound by this certificate.

It is a fundamental rule of law, and of common justice, that no one shall be concluded by a legal judgment, decision or adjudication had or made in any suit or proceeding to or in which he was not a party or privy and of which he had no notice, or in respect to which he had no opportunity to defend himself, or to litigate the question involved, or upon which his liability depended. The jurisdiction of all courts and officers exercising judicial functions is open to investigation, question and inquiry, whenever their proceedings are set up or sought to be enforced; and when there is no jurisdiction, such proceedings are absolutely void. (7 *N. Y. Rep.* 431. 23 *Barb.* 598. 45 *id.* 393.)

If this certificate, therefore, was *prima facie* evidence of the facts, it recites and affirms, or finds, it could not be conclusive on the defendant, and he was clearly entitled to disprove the facts alleged or stated therein, upon which the jurisdiction of the judge depended. It was error therefore, I think, to overrule most of the offers made by the defendant's counsel on the trial. They went to disprove jurisdiction, and to show that the alleged lunatic had not become insane within one year next prior to the granting of

such certificate, as required in section 43 of the said statute as modified in 1850, and that she was not an indigent person, but was possessed herself of a sufficient separate estate for her support, and that her husband and children were each persons of wealth, and abundantly able to support her. Proof also that his wife deserted his house without cause and against his will, and that he was at all times able and ready and willing to support her in a proper manner, should, I think, have been received.

It seems to me that this proof, of itself, would have established a complete defense to the action. A husband who is ready, able and willing to support his wife, who gives her no just cause or occasion to abandon him or leave his bed and board, cannot be compelled to support her elsewhere than at his own house and home if he has one, by any private person, or by the town, or county, whether she be sane or insane. His liability for necessaries provided by other persons for her support, rests entirely upon the ground of his neglect or default.

The law has nothing to do with his domestic relations while he performs his proper duties in the support or care of his wife, and is free from all neglect or misconduct in respect to her, or is ready, willing and able to discharge all his proper duties to her. This proceeding before the county judge, it seems to me, was entirely unauthorized. The lunatic was not in a condition to give the overseers of the poor any jurisdiction, to interfere with her at the expense of the defendant. Certainly not till they had applied to him, and he had refused to take proper care of his wife and provide for her support in a manner conformable to her condition and his ability.

I think a new trial should therefore be granted, with costs to abide the event.

New trial granted.

[Monroe General Term, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith*, Justices.]