JAMES H. GOODALE, as Superintendent of the Poor, etc., Appellant, *v.* WILLIAM E. LAWRENCE, as Executor, etc., Respondent.

An insane wife absent from her husband, and in pressing need of food and shelter, is a " poor person " within the meaning of the provision of the Revised Statutes (1 R. S. 616, § 14), providing for the maintenance of such persons by the county or town.

A husband who has voluntarily permitted his insane wife to absent herself from his house and to become a public charge is liable to an action at the suit of the proper town or county officers for her support, and is estopped from denying, in such action, that she is a pauper.

Such an action cannot be defended upon the ground that the wife aban. doned her husband, as an insane wife is incapable of so doing, and it is the duty of the husband to protect and support her.

(Argued March 1, 1882 ; decided April 11, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 13, 1881, which affirmed a judgment in favor of defendant, entered upon an order setting aside a verdict for plaintiff, and directing judgment for defendant.

This action was brought by the plaintiff, as superintendent of the poor of Orange county, against the executors of the estate of Abraham Maze, deceased, to recover for the support of the testator's wife from October, 1872, to January, 1875.

In the plaintiff's complaint it is alleged that defendant's testator, without the fault or misconduct of his wife, abandoned and neglected to support her ; that she became poor and enfeebled mentally, so as to be unable to work and maintain herself, and that plaintiff was compelled to support her in the poor-house of Orange county.

The answer, among other things, denies that the said testator ever abandoned his said wife, or neglected to support her, or that the plaintiff was compelled to support her, as alleged in the complaint. It also alleged that the wife deserted and abandoned her husband without cause or provocation, and that at

the time mentioned in the complaint the said testator was able, ready and willing to support his said wife, and had a home provided where she could reside.

Upon the trial it appeared that the testator married his wife in Orange county, about the year 1851 or 1852; that they lived together in New York city, at the home of the testator, for about a year or eighteen months, when the wife, becoming insane, left her husband's house and was taken to the house of her half-brother in Orange county, where she remained. In 1855 proceedings were taken, at the instance of the half-brother, to have her adjudged a lunatic, and a committee of her person and estate appointed. She was adjudged a lunatic, and in January, 1856, her half-brother was appointed committee. Notice of a motion to confirm the finding of the jury in this proceeding was personally served on Maze, the testator. It appeared that the wife had a separate estate, amounting to about $800, which was applied by the committee to her support until it was exhausted. In 1866, an order entered that the lunatic be delivered over to the charge of the overseer of the poor of the town of Montgomery, in the county of Orange, that being the town in which she had a settlement. It further appeared that in Orange county the distinction between town and county poor was abolished; all paupers being supported at the joint expense of the several towns as a county charge. She continued to be supported by the county of Orange, out of the poor fund of the county, from that time to the death of the testator, which occurred on the 24th of January, 1875. The plaintiff had been superintendent of the poor of Orange county since the 1st of January, 1870, Orange county having an insane asylum for the support of its insane poor, adjoining the county house; the wife was kept in the insane asylum. She was known at the asylum as Mrs. Van Keuren, and not as Mrs. Maze. It does not appear that the superintendent of the poor of Orange county knew that Maze was her husband. Upon the death of the testator, his executors found and identified the lunatic in the asylum as the widow of their testator. On the trial

the Circuit judge ordered a verdict for the plaintiff for $552.04 the plaintiff stipulating that on the motion for a new trial the court might, in case it determined such order to be erroneous, direct judgment for the defendant. On such motion, subsequently made, the verdict was set aside and judgment ordered for the defendant.

*H. A. Wadsworth* for appellant. The woman being insane was incapable of deserting her husband in the legal sense of the term. (2 Kent, 148; 1 Parsons, 291; *Alna* v. *Plummer* [Me.], 4 Greenl. 238.) The fact that she was compelled to resort to the poor authorities for assistance proves that she is a pauper. (*Charlestown* v. *Groveland*, 15 Gray, 15.) Plaintiff could maintain this action. (*Charlestown* v. *Groveland*, 15 Gray, 15; *New Bedford* v. *Chase*, 5 id. 28; *Hanover* v. *Turner*, 14 Mass. 227; *Monson* v. *Williams*, 6 Gray, 416; *Rumney* v. *Keyes*, 7 N. H. 576; *Alna* v. *Plummer*, 4 Greenl. [Me.] 258; 1 R. S. 617, § 16.; *Matter of McFarland*, 12 Johns. Ch. 440; *Alger* v. *Miller*, 56 Barb. 229; *State* v. *City of Buffalo*, 2 Hill, 434; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 228; *Brewster* v. *Colwell*, 13 Wend. 28; *Pomeroy* v. *Wells*, 8 Paige, 406; *Raymond* v. *Lloyd*, 10 Barb. 483; *Edwards* v. *Davis*, 16 Johns. 281.) The superintendent of the poor of Orange county was the proper officer to care for the wife of the defendant's testator. (1 R. S. 622, § 31, sub. 2; 1 R. S. 616, § 13, sub. 3; 1 R. S. 628, § 58; chap. 277, Laws of 1831; 1 R. S. 626, § 59.) The defendant's testator had notice of the proceedings in which the order under which his wife was received in the asylum was made, and is bound by it. (*Woolcott* v. *Adee*, 3 Lans. 173.)

*Edward F. Brown* for respondent. The superintendent has only authority to take action against the father, mother or children of the poor person. (1 R. S. 614, §§ 1, 2; 1 R. S. 634, § 2; Laws of 1874, chap. 446, § 12; *Pomeroy* v. *Wells*, 1 Paige, 406; *Norton* v. *Rhodes*, 18 Barb. 100.) The order con-

signing her to the custody of the overseer was a nullity as against her husband, as notice was not given to him. (*Suprs. of Monroe County* v. *Budlong*, 51 Barb. 493.) That order was void, as it stated her settlement to be in Orange county, although her husband resided in New York county, and she had there resided with him one year. (1 R. S. 621, § 29.) In an action for necessaries furnished to a wife living separate from her husband, the burden of proof is upon the plaintiff to show that the separation was brought about by improper conduct of the husband. (*Blowers* v. *Sturtevant*, 4 Denio, 46; *People* v. *Pettit*, 74 N. Y. 320.) If the lunatic was possessed of sufficient means, it was the duty of the committee to confine her in a suitable place to be approved by the overseers. (1 R. S. 634, § 1.) If a wife deserts her husband he cannot be made liable for necessaries furnished her during the desertion, unless she has offered to return. (*McCutcheon* v. *McGahay*, 11 Johns. 281, approved; *McGahay* v. *Williams*, 12 id. 393; 2 Smith's Lead. Cas. 440; *Cromwell* v. *Benjamin*, 41 Barb. 558.) If such person was not possessed of sufficient property to maintain herself, it was the duty of certain relatives to provide a suitable place for her confinement, subject to similar approval. (Laws of 1874, chap. 446, §§ 2, 12.) The overseers have the same remedies to compel such relatives to confine and maintain such person, and to pay the costs, as in case of poor persons chargeable to the town. (1 R. S. 634, § 3; Laws of 1874, chap. 446, § 13.) A husband's liability for necessaries provided by other persons for his wife's support rests entirely upon the ground of his neglect or default. (*Suprs. of Monroe County* v. *Budlong*, 51 Barb. 493; *People* v. *Pettit*, 74 N. Y. 320.)

TRACY, J. In the case of *Norton* v. *Rhodes* (18 Barb. 100) it is held that "the superintendent of the poor cannot maintain an action against a husband for boarding, clothing and medical aid furnished to his wife as a pauper, notwithstanding he has maltreated her and expelled her from his house without

just cause, and refuses to provide for her, although of sufficient ability to do so."

This decision was placed upon the ground : *First.* "That the wife of a man, who is bound by the law to support her and who is abundantly able to do so, cannot be regarded as a pauper." *Second.* "That there is no authority for overseers of the poor or county superintendents to maintain an action *in any case,* against any individual, to recover money expended by them for the support of the poor."

It was upon the authority of this case that the learned judge at the Circuit Court felt constrained to set aside the verdict for the plaintiff. We do not think the doctrine of this case can be maintained. The Revised Statutes of this State define the persons entitled to relief from the poor authorities as follows :

"Every poor person, who is blind, lame, old, sick, impotent or decrepid, or in any other way disabled or enfeebled so as to be unable to maintain himself, shall be maintained by the county or town where he may be." (1 R. S. 616, § 14.)

Chief Justice SHAW, of Massachusetts, under a statute similar to our own, states the law as follows: "Any person is held to be a pauper who is in want of immediate relief by reason of sickness, *insanity,* or in immediate need of food, clothes, or shelter, upon the principle of simple humanity, and overseers of every city, district and town are bound by law to furnish him with support, without stopping to inquire whether the person has relatives liable for his support." (*City of Charlestown* v. *Inhabitants of Groveland,* 15 Gray, 15.) "Where the overseers of the poor find a person in distress and in need of immediate relief, they may properly furnish the necessary articles for the supply of his wants. The necessity for such aid would for the time being make such person a pauper. Where such necessity exists, and the supplies are furnished by the proper authorities of the town, the amount may be recovered of the husband. (*Inhabitants of Monson* v. *Williams,* 6 Gray, 416.)

There can be no doubt that an insane wife absent from her home and in pressing need of both food and shelter is to be regarded as a poor person within the meaning of the statute, and it is the duty of the overseers of the poor to give her support without waiting to ascertain whether she has a husband able and willing to support her. A husband who has voluntarily permitted an insane wife to absent herself from his house and become a public charge, when sued for her support by the poor authorities, is estopped from denying that she is a pauper.

We consider it clear that, under the circumstances stated, an action can be maintained against the husband to recover the amount of the expenditure necessarily incurred on account of his wife.

The action rests upon the common-law obligation of the husband to support his wife. If he abandons her or sends her away he is liable at the suit of any one who has furnished her a necessary and suitable support, and for this the law will imply, on his part, a promise to pay. But it is insisted that while an action may be maintained by a citizen for supplies furnished to a wife under such circumstances, no such action can be maintained by overseers of the poor. No good reason can be assigned for such a distinction. If a citizen who volunteers to assist a wife abandoned by her husband may maintain an action at common law upon the implied *assumpsit* of the husband, *a fortiori* may the poor authorities who, in furnishing such assistance, are not volunteers, but act in the discharge of a duty imposed by law. By the wrongful act of the defendant's testator the county of Orange, through its superintendent of the poor, was compelled to incur an expense for his benefit. Under such circumstances there can be no doubt that an action will lie to recover the amount so expended.

In the New England States it is well settled that such an action can be maintained.

In *Rumney* v. *Keyes* (7 N. H. 576) it was held that where a wife, who lived separate from her husband, had become poor and unable to maintain herself and was assisted by the town,

the town could maintain an action at common law to recover of the husband the amount of the expenditure on her account. UPHAM, J., in delivering the opinion of the court, says: "No reason can be assigned why an individual should be holden liable at common law for all necessary supplies furnished by a citizen to his suffering wife or child, arising from his neglect to make such provisions, while the town, whose special duty it is to grant such relief, should be debarred from such remedy.', In *Alna* v. *Plummer* (4 Greenl. 258), a husband, abundantly able to support his wife, who was insane, neglected to protect and provide for her, and she wandered into an adjoining town where she received support, the expenses of which were reimbursed in the first instance by the town in which the husband lived; held, that such town could maintain an action at common law against the husband to recover the amount so paid. But it is said that as the powers of the poor authorities are derived from the statutes, they can exercise no power except such as is expressly conferred; and as power to bring an action against a husband for necessaries supplied to his wife is not among the powers enumerated, it is urged that no such power exists. This, we think, is a mistake. Our statutes do not declare that the husband shall support the wife, for the reason that it was not deemed necessary to re-enact the common law. They were intended to supplement the common law and to compel the support of poor persons by certain of their relatives upon whom the common law does not impose such obligation. And where the obligation has been ascertained and determined in the manner provided, and such relative fails and neglects to perform the duty, the statute gives an action as for money had and received to the overseers of the poor against such relative to recover the amount of such support. (1 R. S. 616, § 7.) But we do not look to the statute to furnish a remedy for a breach of a common-law duty. Where a husband refuses to support his wife, he neglects a duty imposed by the common law and incurs a common-law liability to any one who furnishes her a necessary support.

It is undoubtedly true that a husband is only bound to sup-

port his wife at his own home, and when he is both able and willing to support her there and she willfully abandons him, she does not carry with her the credit of the husband, nor can she impose any liability upon him. (*Bd. Supr's Monroe Co.* v. *Budlong*, 51 Barb. 493.) But an insane wife is incapable of abandoning her husband. When a wife is suffering under such affliction, it is the duty of the husband — a duty imposed by the relation he bears to her as well as by the plainest dictates of humanity — to protect and support her. This duty the testator neglected. He permitted his wife to wander from his home when insane; he allowed her to be adjudged a lunatic by proceedings taken in a distant county, and to remain in the custody of a committee appointed of her person and estate until her separate estate was exhausted, never himself contributing a penny to her support, and although abundantly able to support her, he suffered her to become an object of public charity and to find a home in a poor-house, where he never visited her and where he never even made himself known as her husband. It would be a reproach to our jurisprudence if, under such circumstances, he could escape liability to those, who, to some small degree, extended to his suffering wife that protection and support which he so cruelly and so persistently withheld.

The judgment for the defendant at Circuit and the order setting aside the verdict for the plaintiff should be reversed and judgment on the verdict ordered for the plaintiff, with costs.

All concur, except RAPALLO, J., absent.

Judgment accordingly.