McNairy County *v.* McCoin.

McNAIRY COUNTY *v.* McCOIN.

(*Jackson.*    May 7, 1898.)

COUNTY.    *Entitled to indemnity for support of lunatic, when.*

An action by a county for indemnity out of the funds belonging to a lunatic may be maintained against the lunatic and her guardian, when, by the latter's neglect, the county has been compelled to provide for her as a pauper.

Code construed: §§ 2678, 2690, 2691 (S.); §§ 2101, 2113, 2114 (M. & V.); §§ 1594, 1606, 1607 (T. & S.).

FROM M'NAIRY.

Appeal from Chancery Court of McNairy County. A. G. HAWKINS, Ch.

WOOD & BARNHILL for McNairy County.

J. C. HOUSTON for McCoin.

McALISTER, J.    This bill was filed by McNairy County to recover the sum of $300 for the board and maintenance of a lunatic. The lunatic and her guardian are both made parties defendant.

It is alleged in the bill that some time prior to the year 1891, the said lunatic, Ellen McCoin, left the custody of her regular guardian, in Hardeman

County, and came to McNairy County; that she remained there for some time in a very destitute condition, without friends and without means of support; that her regular guardian continued to neglect her, and that it was absolutely necessary for the preservation of her life that necessary food, clothing, and medical attention be furnished her; .that, under these circumstance, in June, 1891, she was admitted by the commissioners of the McNairy County Asylum for the Poor as an inmate.

The authorities of McNairy County, at that time, were not aware that the lunatic had a guardian in Hardeman County, or that he had any funds in his hands belonging to his ward. The county first became apprised of these facts in 1896, and thereupon made demand of said guardian for compensation for the expense incurred in the board and maintenance of said lunatic. The guardian declined to make compensation or to remove her, and she is still an inmate of said institution. It is charged that said guardian has in his hands the sum of five hundred and sixty dollars, funds belonging to said lunatic ward, and the bill prays that an order be made on him for the payment of said account out of said funds.

A demurrer was interposed on behalf of the guardian and his ward, assigning as grounds thereof: (1) That said lunatic ward had been admitted to said asylum without a contract, either express or implied, with the guardian or said ward; (2) because said

county asylum is a charitable institution, and said necessaries were furnished said lunatic gratuitously, and constitute no charge against her or her said guardian.

The Chancellor sustained the demurrer, and dismissed the bill. The county of McNairy appealed, and has assigned errors.

It is insisted, in support of the action of the Chancellor, that the county asylum of McNairy County, having been established under the general laws of the State, the Court will take judicial notice that it is purely a charitable or eleemosynary institution, with no authority of law for charging inmates for accommodations furnished them. It is said, moreover, there was no contract in this case, either express or implied, and the accommodations having been furnished voluntarily, the county cannot recover, and the principle is invoked that if services are rendered gratuitously compensation cannot afterwards be claimed.

It appears from the record that the McNairy County asylum was established in pursuance of the statute, which provides, viz.: "There shall be provided, at the expense of every county of the State, an asylum for the poor thereof, consisting of a parcel of land of such size, and of buildings thereon of such dimensions and construction, as the County Court may consider necessary and proper, a majority of the justices being present." Shannon's Code, § 2678.

"The commissioners shall examine all applicants

for admission into the asylum, and admit or reject any applicant, as they may think right,'' etc. Shannon's Code, § 2690.

'' No person shall be admitted into the asylum who has not been an inhabitant of the county, by actual residence in it, for one whole year next preceding his application.'' § 2691.

In the management of the asylum, the commissioners shall have power, viz.: (1) To prescribe rules and regulations for the management of the farm and for the treatment of the inmates of the asylum and modify and change them at pleasure; (2) to prescribe the manner in which said inmates shall live, sleep, be clothed, and labor, if any of them are able to labor.

It will be observed that in the sections quoted, which are the only provisions of the statute relating to this subject, there is no express authority for the commissioners to demand compensation for the care and treatment of paupers, but the institution is established as a charity for the benefit of those who are incapable of taking care of themselves. It is insisted, however, that the lunatic ward and her guardian are liable for necessaries furnished one, who, at the time, was not a pauper, but had simply been neglected by her guardian.

Mr. Bishop, in his work on Contracts, Sec. 232, lays down the general rule on this subject, viz.: '' In case of insanity, one who, whether by formal agreement with the insane person or not, in good

faith furnishes him with necessaries, being things required for his sustenance or comfort, and suitable to his means, condition, and habits of life, can, if he is not otherwise supplied, recover of him, on a promise which the law will imply, what they are reasonably worth. Were the law not so the insane might perish. Even expenditures and services for the protection of his estate may be included in this class.''

But while stating this general principle, applicable to individuals who have furnished necessaries to the insane, the author lays down a wholly different rule, in cases where the benefit has been conferred by the county. '' If a statute,'' says the author, '' has imposed on a town or county the duty of rendering support to paupers, after it has furnished the support in a particular instance, thus discharging its own obligation, it can recover therefor nothing of any other body or person. The common illustration is where the pauper is found afterwards in possession of property, or leaves an estate, upon his death, and it is held, that, in the absence of fraud, there is no implied promise whereon to base an action for pay. Another form of reasoning, tending to the same result, is to regard the relief as an executed gift, which, therefore, cannot be reclaimed.'' Bishop on Contracts, Sec. 209.

We fail to perceive any sound reason for the distinction taken between the two cases. In the case of *Goodale* v. *Lawrence*, 88 N. Y., 513 (S. C., 42 Am. Rep., 259), it was insisted by counsel that

while an action may be maintained by a citizen for supplies furnished to a wife under such circumstances, no such action can be maintained by overseers of the poor. Said Justice Tracy: "No good reason can be assigned for such a distinction. If a citizen who volunteers to assist an [insane] wife abandoned by her husband, may maintain an action at common law upon the implied assumpsit of the husband, *a fortiori* may the poor authorities, who, in furnishing such assistance, are not volunteers, but act in the discharge of a duty imposed by law."

Again, in *Burney* v. *Keyes*, 7 N. H., 576, it was held that where a wife who lived separate from her husband had become poor and unable to maintain herself, and was assisted by the town, the town could maintain an action at common law to recover of the husband the amount of the expenditure on her account. Said Upham, Judge: "No reason can be assigned why an individual should be holden liable at common law for all necessary supplies furnished by a citizen to his suffering wife or child, arising from his neglect to make such provision, while the town, whose special duty it is to grant such relief, should be debarred from such remedy."

In the case first cited (*Goodale* v. *Lawrence*), it was held that where a husband refused to support his wife, he neglects a duty imposed by the common law, and incurs a common law liability to anyone who furnishes her a necessary support.

The duty imposed by the common law upon the

guardian to maintain and support his ward, is no less obligatory than that imposed upon the husband to support his wife, and if the guardian, with means of the ward at his disposal, breaches his duty and permits his ward to become a charge upon the county, it should be reimbursed for expenses incurred in supplying necessaries to said ward. It is true the county asylum, established under the laws of this State, is a charitable institution. It was designed for the care and maintenance of indigent paupers, and not for the benefit of those who have means sufficient to support themselves. If, therefore, it appears that the county, through the neglect of the guardian, has been compelled to provide for one who was not a pauper, it would seem but just that the county should be indemnified out of the funds belonging to the ward, and to this effect is the great weight of authority. *Goodale* v. *Lawrence*, 88 N. Y., 513; *Inhabitants of Morison* v. *Williams*, 6 Gray, 416; *Burnney* v. *Keyes*, 7 N. H., 576; *Alna* v. *Plummer*, 4 Greenl., 258; *City of Charleston* v. *Inhabitants of Groveland*, 15 Gray, 15; *Hanover* v. *Turner*, 14 Mass., 227 (S. C., 7 Am. Dec., 203); *Temple* v. *Stratton*, 128 Mass., 137; *Arlington* v. *Lyons*, 131 Mass., 328; *Wertz* v. *Blair Co.*, 66 Penn., 18; *Jasper Co.* v. *Osborn*, 59 Iowa, 208; *McCook Co.* v. *Kammose*, 7 S. D., 558; 58 Am. St. Rep., 854; 31 L. R. A., 461.

In the last case it appeared that there was a

McNairy County *v.* McCoin.

statute of South Dakota imposing upon children the duty to support indigent parents, but no provision was made for enforcing same. Said the Court: "The duty, under the statute, rests upon the child, but, in consequence of his neglect, the statute humanely requires the county to provide such support. The county does not act officiously, but under the coercion of the law, and supplies the support which the son or daughter was under obligation (by statute) to supply. The duty to support being by law upon the child, he is liable upon the same principle that the father is liable at common law for necessary support furnished to a destitute minor child whom it is his duty to support. If, under such circumstances, the county, under the direction of the law, furnishes necessaries to the indigent and helpless father, we think, upon principle, it ought and may recover therefor against the children, whose duty it was to furnish the same, but who neglected and refused to do so. See, also, *Howard* v. *Whetstone*, 10 Ohio, 365; *Springfield* v. *Demott*, 13 Ohio, 104; *Ashland Co.* v. *Richland Co. Infirmary*, 7 Ohio St. Rep., 65 (S. C., 70 Am. Dec., 49); 15 Ohio St. Rep., 409; 21 Ohio St. Rep., 374, 375; *Bangor* v. *Wiscasset*, 71 Me., 535; *Dakota* v. *Winneconne*, 55 Wis., 522; *Chester Co.* v. *Maloney*, 65 Pa., 144; 2 Kent's Com., 148.

The case of *Montgomery Co.* v. *Ristine*, 8 L. R. A., 461, decided by the Supreme Court of Indiana, and holding a contrary view, is out of line with the

17 P—6

current of authority, and was decided, moreover, by a divided Court.

The decree of the Chancellor sustaining the demurrer is reversed, and the cause will be remanded for an answer. The county of McNairy will pay the costs of the appeal.