JOHN S. ELLIOT, Executor, in equity,

*vs.*

MARY T. FESSENDEN and others.

Cumberland.    Opinion March 12, 1891.

*Lapsed Legacy.   Relative.   R. S., c. 74, § 10.*

By R. S., c. 74, § 10, it is provided that, "when a relative of the testator, having a devise of real or personal estate, dies before the testator, leaving lineal descendants, they take such estate as would have been taken by such deceased relative, if he had survived." *Held :* that the word, "relative," in this section of the statute means one connected with the testator by blood; a blood relation.    It does not include within its meaning one connected with the testator by marriage only.

ON REPORT.

Bill in equity, heard on bill, answers and proofs, and brought by the executor of the will of Sarah H. Jenks, late of Bath, deceased, to obtain a construction of the same, and to ascertain whether, under its residuary clause in favor of John Patten, the property therein should go to his heirs, by right of representa--

tion, or be distributed as an intestate estate, said Patten having died before the testatrix.

The case shows that Sarah H. Jenks made her will November 28, 1885. She died July 20, 1887, and her will was admitted to probate on the first Tuesday of September, 1887. She left as her next of kin and only heirs, Mary T. Fessenden, and other defendants in the bill, who were her cousins.

The residuary clause of the will provides that: "All the rest, residue and estate, real, personal or mixed, of which I may die possessed, and all estate, real personal or mixed, of which I may have the right of disposal at the time of my decease, I give, devise and bequeath to John Patten, of Bath, his heirs and assigns, to his and their own use forever."

John Patten, the residuary legatee, died February 24, 1887, leaving as his only heirs, John O. Patten, and Clara Patten Goodwin, grandchildren of himself and his wife, Betsey, none of whom were blood relatives of the testatrix. After the death of his wife, Betsey, John Patten married March 22, 1830, Mary, the sister of Sarah H. Jenks. No issue of the second marriage was living at the date of the will, the wife, Mary, having died March 30, 1862.

Marcia G. Lord was a legatee in the will. She was a sister of Caleb S. Jenks, husband of the testatrix. Both died before the making of the will. Marcia G. Lord, left as her only heir a daughter, Annie Louise Lord, one of the parties defendant.

The executor having settled his account in probate, has still on hand a large sum as the residue of the estate. He, thereupon, alleges in his bill :

"And your orator further complaining showeth unto your honors, that grave and important questions have arisen as to the construction and effect of said will and the duties and liabilities of your orator, as such executor, among which are the following, to wit :

"1.    Whether or not the legacy of one thousand dollars given by said will to said Marcia G. Lord, shall be paid by the executor of said will to said Annie Louise Lord.

"2.    Whether or not the rest and residue of the estate, real,

personal or mixed, and all other estate given by said will to said John Patten, shall be distributed as intestate estate, or shall be paid over by the executor to said John O. Patten, and Clara Patten Goodwin, grandchildren of said John Patten.

"By reason of which questions your orator is greatly hindered and embarrassed in the performance of his duty as such executor.

"And in order that your orator may bring before the court all matters within his knowledge, information or belief which may bear on the questions aforesaid, or which either of the parties aforesaid may claim bear on the same, your orator charges, and saith unto your honors, that, at the time said will was drawn, said testatrix passed the scrivener a list of pecuniary legacies and said to the scrivener that she wished to give the residue of her estate to said John Patten; that thereupon the scrivener asked her wishes in the event said John Patten should decease before herself, to which she replied in substance as follows : 'I suppose in that event I could make some addition to my will;' and added : 'perhaps it will not be much;' that, after the death of said John Patten, said testatrix was by her infirmities disabled from thus adding to her said will, if she had desired so to do ; that, as hereinbefore set out, she, as also her husband from the time of her marriage until his decease, had for over fifty years been resident in the family of said John Patten; that her relations to said Gilbert E. R. Patten and to his children, said John O. Patten and Clara Patten Goodwin, were always of the most friendly and affectionate character, and the habitual form of address from one to the other was that of persons connected by blood ; that said testatrix was also on friendly and affectionate terms with each of the defendants herein named as her next of kin ; that some of them were at the date of said will in very moderate pecuniary circumstances, as was well known to said testatrix ; and that the following of them are among the persons to whom legacies were given by said will, to wit :   Charles A. Stewart, named in said will Charles Stewart; Thomas H. Stewart, named in said will Thomas Stewart; Mary A. Stewart, Mary T. Fessenden, Wealthy B. Sawyer, Sarah P. Bosworth, named in said will Sarah Bosworth ; Elizabeth A. Bosworth,

named in said will Elizabeth Bosworth; Lincoln Patten, Sarah J. Holmes, Mary R. P. Stockbridge and Helena F. Troup, named in said will Helena Troup," &c. . . .

Extracts from the answer of Mary T. Fessenden, and others, defendants :

"And these defendants further answering and protesting that the allegations in complainant's bill of complaint, as to the relations of friendship existing between the said testatrix and Gilbert E. R. Patten, John O. Patten, Clara Patten Goodwin and other defendants, named in complainant's bill of complaint, and as to the habitual form of address existing between said parties, or any of them, and the said testatrix, and as to the pecuniary circumstances of said parties, or any of them, are not material, and believe it is unnecessary to make further answers thereto ; . . . that said allegations set forth on page five (*ante* p. 199) of complainant's bill of complaint, are immaterial and can not be admitted or allowed to defeat the general principles of law, applicable to the construction of wills, or affect the rules of law, by which testamentary dispositions are to be governed, and these defendants claim that all that portion of said estate of said Sarah H. Jenks, devised to said John Patten, in said will, is intestate estate, and pray that it shall be so declared by this Honorable Court, and that the executor shall transfer and pay to said Mary T. Fessenden, Wealthy B. Sawyer, Mary A. Stewart, Helena F. Troup and John P. Delano, administrator of Thomas H. Stewart and Charles A. Stewart, deceased, their several shares in and to the rest and residue of the estate, real, personal and mixed, and in all other estates given by said will, to the said John Patten, and that the same shall be distributed as intestate estate."

Extracts from the answer of John O. Patten and Clara Patten Goodwin : . . .

"These defendants further say that they have no knowledge as to the alleged conversation that passed between the testatrix and the scrivener, at the time of the execution of said will, and shall call for proof of the same if it is material and pertinent to the issue, but they deny that it is either material or pertinent,

and respectfully ask that it be struck from the bill, and that it be not regarded by the court.

"These defendants have no knowledge, whether, after the death of said John Patten, said testatrix was, by her infirmities, disabled from adding to her will, if she had desired so to do, and deny the materiality or the pertinency of this averment. They admit that said testatrix, as also her husband and two children from the time of her marriage until his decease, had for over fifty years been resident in the family of these defendants' grandfather, said John Patten, and aver that neither she nor her husband ever made compensation therefor, or were requested or desired so to do; they admit that her relations to their said father, Gilbert E. R. Patten, and to themselves, and, as they aver, to their said grandfather, John Patten, were always of the most intimate and affectionate character, and they admit and aver that their habitual form of address from one to the other was that of persons connected by blood.

"They admit that said testatrix was on friendly, but, so far as their knowledge goes, not on intimate terms with the kindred mentioned in said bill, and they admit that legacies were given by said will to the several other defendants named in said bill, and aver that said legacies were carefully proportioned by the testatrix, and were intended by her as the sole benefit said other defendants should take under said will.

"And these defendants further aver that said testatrix always insisted on the mutual use, as aforesaid of the appropriate address of blood relationship, and was very sensitive touching its omission even by accident.

"And in order that your Honorable Court may be informed, so far as is possible, of the peculiarly intimate relations between said testatrix on the one part, and said John Patten and his heirs, said Gilbert E. R. Patten and these defendants, on the other part, and in order that the court may be placed in the situation of the testatrix, herself, when said will was made, these defendants further answering show to your Honors that when said Caleb S. Jenks, husband of the testatrix, died, on the 6th day of July, 1870, said Gilbert E. R. Patten, administra-

tor in his estate under due appointment from the Probate Court of Sagadahoc County, and as such administrator, paid off and satisfied out of his own means, debts against said estate to the amount of two thousand five hundred seventeen dollars and four cents, in excess of all assets received by him from said estate, and though there still remained in said estate certain vessel-property and real estate in Bath, sufficient in value to satisfy his said claim against said estate for money thus advanced, he voluntarily released to said testatrix all said debt and all his claim upon said property, on the 7th day of March, 1874 ; that afterward on the 6th day of November, 1879, said Gilbert E. R. Patten, made and duly executed a will, making said testatrix joint and equal legatee with his own children, these defendants, in the use and income for life of all his property, real and personal, except what he gave to his wife ; and that on the death of said Gilbert, on the 12th day of January, 1882, said will was duly admitted to probate as his last will and testament ; these defendants are informed and believe that the property left by said testatrix at her death came almost wholly, if not wholly, by gift from said John Patten, and from his prospective heir, said Gilbert E. R. Patten, and from the accumulations from said gifts under the management of said John and Gilbert, rendered without charge ; that said John Patten, in his lifetime was opposed to the making of any will and in fact made none, but that in recognition of the facts herein recited, and of the sources of her said property, and in pursuance of a mutual agreement or understanding between her and said John Patten, the latter on or about the 24th day of November, 1879, made provision for the said testatrix, in lieu of a will, by deed whereby she was to have, at the decease of said John Patten, during her natural life, the use and income of his homestead in said Bath, together with the use of all furniture, bedding, plate, pictures, ornaments, musical instruments, fuel and provisions ; also the horse, cow, carriage, sleigh, harness, robes, hay, grain and stable utensils contained in and about his said mansion house, ell and stable of which he might die possessed ; with the right to sell and dispose of the horse, cow, carriage, sleigh and harness, at her

option and for her own benefit; the taxes and repairs on the premises aforenamed not to be borne and paid by the said Sarah H. Jenks, but from the other property and estate of the said John Patten; and on the death of said John, she came into possession thereof, and held the same till her death, and on her part said testatrix was to and did make the will set forth by this bill making said John Patten and these defendants, as his heirs and the heirs of said Gilbert, her residuary legatees.

"These defendants, therefore, claim that said testatrix has always treated and called said John Patten and his heirs, said Gilbert and these defendants, as blood relations, and that she fully intended that these defendants should succeed said John in the title to all said undistributed residue of her estate, real and personal, and that such is the legal construction of said will, and they pray the court that they will direct the executors to pay it over to them in accordance with the terms of the will and the intent of the testatrix."

*N. and H. B. Cleaves, Stephen C. Perry* with them, for Mary T. Fessenden, and others.

John Patten was not a relative of Sarah H. Jenks, and dying before her, the legacy to him became void. The residuary legacy lapsed, and the testatrix, as to that, died intestate. *Ballard* v. *Ballard*, 18 Pick. 43; Am. Law of Adm. p. 934, § 435, and cases cited. The word "relative," in R. S., c. 74, § 10, an exception to the general rule, applies to persons in the line of consanguinity, and not those connected by marriage. 2 Will. Exors. 1004; Jar. Wills, 666; *Ennis* v. *Pentz*, 3 Brad. 385; Am. Law of Adm. 936; *Maitland* v. *Adair*, 3 Ves. 231; *Worsely* v. *Johnson*, 3 Atk. 761; *Moses* v. *Allen*, 81 Maine, 268; *Estate of Pfuelb*, 48 Cal. 643; *Esty* v. *Clark*, 101 Mass. 36; *Prather* v. *Prather*, 58 Ind. 141; *Cleaves* v. *Cleaves*, 39 Wis. 96; *Kenniston* v. *Adams*, 80 Maine, 294. The words, "his heirs and assigns, to his and their use forever," in the residuary clause, do not enlarge the rights of John Patten's descendants. They do not indicate an intention to take by substitution. Those taking by representation are not entitled

to what the person they represent never had. *Kimball* v. *Story*, 108 Mass. 384 : *Dickinson* v. *Purvis*, 8 S. and R. 71 ; *Barnet's Appeal*, 104 Pa. St. 342 ; *Maxwell* v. *Featherstone*, 83 Ind. 339 ; Am. Law of Adm. p. 936, § 434, and cases cited.

*Baker, Baker and Cornish*, for John O. Patten and Clara Patten Goodwin.

The intention of the testatrix was to leave the residue to John Patten and his heirs, these defendants. She wished to dispose of all her property, and not to die intestate as to any. These respondents have no other bequests under the will, while all others, except one, have legacies varying from one hundred to one thousand dollars. She did not intend to remember remote relatives and forget members of her own household, whose parents were to her as brother and sister from birth, and the source of a large part of her property.

John Patten, brother-in-law of Mrs. Jenks, was a "relative," within the meaning of the statute. Its ordinary and usual meaning embraces connections by blood or by marriage. It is not confined to kindred, but is a broader term, applying to both. Webster and Worcester give the same meaning, a person connected by blood or alliance. Kindred, defined as " relatives by blood," implies that there can be relations other than by blood. *Kenniston* v. *Adams*, 80 Maine, 290, simply holds that a husband and wife are not relatives within the meaning of this statute.

WALTON, J. This is a suit in equity, instituted by the executor of the last will and testament of Sarah H. Jenks, asking the court to determine the construction of the will, and whether certain legacies therein mentioned lapse or go to the lineal descendants of the legatees, the legatees themselves having died before the testatrix.

Generally, if a legatee dies before the testator, the legacy lapses. But to this rule there is an exception in favor of relatives.

"When a relative of the testator, having a devise of real or personal estate, dies before the testator, leaving lineal descend-

ants, they take such estate as would have been taken by such deceased relative, if he had survived." R. S., c. 74, § 10.

The word "relative," in this section of the statute has already been defined by the court. It means one connected with the testator by blood; a blood relation. It does not include within its meaning one connected with the testator by marriage only. So held in *Keniston* v. *Adams*, 80 Maine, 290. And such is generally held to be its meaning, when used in similar statutes, although it may sometimes be used in a more extended sense. *Esty* v. *Clark*, 101 Mass. 36.

Such being the law, the conclusion is inevitable that the bequests to John Patten and Marcia G. Lord, mentioned in the will of Sarah H. Jenks, are void. They both died before the testatrix. And being connections of hers by marriage only, they were not relatives within the meaning of the law, and their legacies lapsed; and the residuum of the estate, after paying all other legacies and the expenses of administration, must be paid to the heirs at law of the testatrix.

Costs, including reasonable counsel fees, are allowed to all the parties to this suit, to be paid by the executor out of the assets of the estate, and charged in his administration account.

*Decree accordingly.*

PETERS, C. J., VIRGIN, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred.