WAPELLO COUNTY v. FRED EIKELBERG, Appellant.

**Insanity:** SUPPORT: LIABILITY OF HUSBAND OF PATIENT. The term "relative" as used in Code section 2297, relating to liability of relatives for support of the insane at a state hospital, is to be understood in its generic rather than its technical sense; so that a husband is liable to a county under the statute for the amount advanced by it to support his insane wife at a hospital, although the relationship is that of affinity rather than consanguinity.

*Appeal from Keokuk District Court.—*HON. W. G. CLEMENTS, Judge.

WEDNESDAY, OCTOBER 21, 1908.

REHEARING DENIED WEDNESDAY, JANUARY 20, 1909.

ACTION to recover from defendant, as husband of Anna Eikelberg, the several sums paid by the plaintiff county to the State for her care and treatment at the hospital for the insane located at Mt. Pleasant. From judgment as prayed the defendant appeals.—*Affirmed.*

*Stockman, Hamilton & Baker,* for appellant.

*Seneca Cornell* and *Lowenberg & Coen,* for appellee.

LADD, C. J.—The only question raised on this appeal is whether the husband is liable to the county for the amount paid by it to the State for the care and treatment of his wife when confined in one of the hospitals for the insane. Such an obligation is not to be implied (*County of Delaware v. McDonald,* 46 Iowa, 170), and exists, if at all, by virtue of section 2297 of the Code, which reads:

The provisions herein made for the support of the insane at public charge shall not be construed to release the estates of such persons nor their relatives from liability for their support; and the auditors of the several counties, subject to the direction of the supervisors, are authorized and empowered to collect from the property of such patients, or from any person legally bound for their support, any sums paid by the county in their behalf, as herein provided; and the certificate from the superintendent, and the notice from the Auditor of State, stating the sums charged in such cases, shall be presumptive evidence of the correctness of the sums so stated. If the board of supervisors in the case of any insane patient who has been supported at the expense of the county shall deem it a hardship to compel the relatives of such patient to bear the burden of his support, or charge the estate therewith, they may relieve such relatives or estate from any part or all of such burden as may seem to them reasonable and just. The estates of insane or idiotic persons who may be treated or confined in any county asylum or poorhouse, and the estates of persons legally bound for their support, shall be liable to the county for the reasonable expense, or so much thereof as may be determined by the board of supervisors.

Appellant contends that the phrase "any person legally bound" is limited by the word "relatives" above, and that, as the wife is not connected with her husband by consanguinity, she is not a relation. As employed in

statutes and instruments, the words "relation" or "relative" are usually construed technically, and to refer to one connected by the ties of blood. *Cleaver v. Cleaver,* 39 Wis. 96 (20 Am. Rep. 30); *Worseley v. Johnson,* Atk. 761; *Esty v. Clark,* 101 Mass. 36 (3 Am. Rep. 320); *Elliott v. Fessenden,* 83 Me. 197 (22 Atl. 115, 13 L. R. A. 37); *Supreme Council Order of Chosen Friends v. Bennett,* 47 N. J. Eq. 39 (19 Atl. 785). When employed in their generic, as distinguished from their technical, sense, however, the words include those connected by affinity as well as consanguinity. Thus, in applying the rule that transactions between relatives will be closely scrutinized when charged to be in fraud of creditors, the Supreme Court of Nebraska held a brother-in-law to be a relative. *Marcus v. Leake,* 4 Neb. (Unoff.) 354 (94 N. W. 100). In *Lewis v. Mynatt,* 105 Tenn. 508 (58 S. W. 857), a statute provided for inheritance from illegitimates "leaving no relatives under existing laws entitled to his or her estate," and the court, in holding that husband and wife were not thereby eliminated, observed: "There can be no doubt that the word 'relative,' when employed in a strictly technical sense, signifies a relationship by blood only; but, as ordinarily used, it includes relationship by affinity, as well as by consanguinity, and we are convinced, from a careful study of the act, that those passing it had this broader signification in their minds." The lexicographers define the word in harmony with this view, and as it is employed in the statute not to create a liability, but to negative any intention of releasing from liability by the enactment of the preceding sections, we are of the opinion that the word "relatives" was intended to be understood in the generic, rather than the technical, sense. As said, its effect is limited to obviating any release, and not in creating a liability. That is imposed by authorizing the board of supervisors "to collect from any person legally bound for their support." That the

husband is thus bound to support his wife is too well settled to require the citation of authority, but see *County of Delaware v. McDonald, supra; Heacock v. Heacock,* 108 Iowa, 543; *Descelles v. Kadmus,* 8 Iowa, 51; *Porter v. Briggs,* 38 Iowa, 166; *Goodale v. Lawrence,* 88 N. Y. 513 (42 Am. Rep. 259).

True the husband's liability for the wife's support is at the matrimonial home, but the test of this statute does not concern the details of responsibility, only the fact that the person liable must be under legal obligation to furnish the unfortunate support. Counsel suggest reasons which might well have led the Legislature to pause before affixing such liability, but are not persuasive in the construction of the statute as contended. The district court rightly found the husband liable for his wife's maintenance at the asylum.—*Affirmed.*