ANNA R. SCHUTTE *vs.* WALTER G. DOUGLASS, CONSERVATOR, ET ALS. (ANNA R. SCHUTTE'S APPEAL FROM PROBATE).

Third Judicial District, Bridgeport, April Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The word "relatives," when used generically, includes persons connected by marriage as well as by blood, and such is its meaning in § 2744 of the General Statutes providing that a Court of Probate may commit to a sanitarium an habitual drunkard upon application by "any of his relatives."

The purpose of the statute is to protect and safeguard the rights of the inebriate by requiring the application for his commitment to be made by one who has an interest in him; and this is accomplished by permitting a relative by marriage to apply, since his interest may be as great or greater than that of a blood relative,

Schutte *v.* Douglass.

An inebriate, resident in New York, was brought to a sanitarium in Stamford in this State, remained there voluntarily after acquiring full knowledge of the situation, and made no objection to an order of the local Court of Probate committing her to the institution. Shortly thereafter a conservator was appointed by the same court upon the inebriate's own application in which she alleged her residence to be in Stamford. *Held* that in view of these facts it could not be said as matter of law that the court erred in finding that the inebriate was, at the time of her commitment, a "resident" of Stamford within the meaning of § 2744 of the General Statutes authorizing the commitment of one who was a "resident of or domiciled within the probate district."

One who invokes the action of a Court of Probate, alleging his residence within the probate district, will not afterward be permitted to deny the truthfulness of that allegation and challenge the jurisdiction of the court in that proceeding upon the ground of his nonresidence.

Courts of Probate in this State possess only such powers as are expressly or by implication conferred upon them by statute. Under General Statutes, § 203, they may modify or revoke any order or decree made by them *ex parte* before an appeal therefrom, but they have no power to set aside a final decree rendered after due notice and hearing of all parties interested. Such a decree can be reversed or modified only upon appeal.

In a will the term "relatives" is used in a restricted sense, and unless the contrary appears is construed as referring only to those persons connected by blood.

Argued April 18th—decided June 2d, 1916.

APPEAL by the plaintiff from the denial, by the Court of Probate for the district of Stamford, of her application to set aside an order of said court committing her to a sanitarium in Stamford, and also a decree of said court appointing a conservator over her and her estate, taken to and tried by the Superior Court in Fairfield County, *Shumway, J.;* facts found and judgment rendered confirming the action of the Court of Probate, from which the plaintiff appealed. *No error.*

Mr. and Mrs. Mattern, the appellees, are husband and wife, and Mrs. Schutte, the appellant, is a sister of Mrs. Mattern. Prior to March 26th, 1914, all resided at Dobbs Ferry, New York. On this day Mrs.

Schutte was an habitual drunkard. She was then living with Mr. and Mrs. Mattern. On this day Mrs. Schutte was found lying in an intoxicated condition in the railroad station at Dobbs Ferry, and there remained from 10 a. m. until 3 p. m., when Mr. Mattern was notified, went to the station and placed her in the ladies' room of the station. He returned to his school and when it was dismissed advised with Doctor Barry, and acting upon his advice, and with the object of benefiting Mrs. Schutte, arranged to place her in Dr. Givens' sanitarium in Stamford. He then hired an automobile and in company with Dr. Barry drove to Dr. Givens' sanitarium and arrived there in the evening of the 26th. When Mrs. Schutte arrived at Dr. Givens' she was informed of her whereabouts, and was told by Dr. Givens that she could not remain in the sanitarium unless she signed a voluntary commitment, which was a request for treatment in his institution. She had so far recovered as to understand her act, and she thereupon signed the voluntary commitment.

Thereafter Dr. Givens prepared, upon information furnished by Mr. Mattern, an application addressed to the Court of Probate for the district of Stamford, petitioning for the commitment of Mrs. Schutte to an inebriate asylum, and Mr. Mattern signed this. In this application Mr. Mattern was described as a brother of Mrs. Schutte, when in fact he was a brother-in-law. Mr. Mattern signed the application upon the advice of Dr. Givens that a relative, under the statute under which the application was brought, was any person connected with the alleged inebriate by blood or marriage.

The Court of Probate made an order for due service of and hearing upon this application, and service was made upon Mrs. Schutte at Dr. Givens' sanitarium in accordance with the order.

On the morning of the 27th, Dr. Givens presented

to Mrs. Schutte a second voluntary commitment which, after its details were explained to her, she signed. At this time Mrs. Schutte was normal, sober and knew exactly what she was doing. Dr. Givens' motive in presenting the second commitment to Mrs. Schutte was that he desired to make certain that she had not changed her mind, and that her act of signing of the night before continued to be her voluntary act. Mrs. Schutte had notice of the hearing, but made no request to be present.

The Court of Probate, after hearing had on April 1st, 1914, ordered Mrs. Schutte committed to said sanitarium for one year from April 1st, 1914.

Mrs. Schutte, at the time of her commitment to Dr. Givens' sanitarium, was voluntarily residing in Stamford and was an habitual drunkard.

Thereafter Mrs. Schutte communicated with her friend Dr. Douglass, and upon his advice and through him Mrs. Schutte employed as an attorney Mr. Nicholson. Shortly thereafter Mr. Nicholson, after consultation with Mrs. Schutte, prepared an application for the appointment of a conservator over Mrs. Schutte and filed the same in the Court of Probate describing Mrs. Schutte as a resident of Stamford. Service was made on Mrs. Schutte in accordance with the order of the Court of Probate. Thereafter, upon evidence produced by Mr. Nicholson, the Court of Probate appointed Dr. Douglass as conservator of Mrs. Schutte on April 27th, and she was thereupon released from the sanitarium.

No appeal was taken from the order appointing the conservator. No appeal was taken from the order committing her to Dr. Givens' sanitarium. Neither Mrs. Schutte, nor anyone for her, requested her release from the sanitarium, either of the Court of Probate or of the sanitarium.

On May 6th, 1914, Mrs. Schutte, at the instigation of Dr. Douglass, addressed a petition to the Court of Probate requesting the court to set aside and revoke the order committing her as an habitual drunkard and the order appointing Dr. Douglass conservator.

On June 5th, 1914, after hearing had, the Court of Probate denied the application. The present appeal was taken from the order dated June 5th, 1914. The term of commitment of Mrs. Schutte had expired prior to the time when this appeal was heard in the Superior Court.

*Edward K. Nicholson*, for the appellant (Mrs. Schutte).

*Charles D. Lockwood* and *Raymond E. Hackett*, for the appellees (Mr. and Mrs. Mattern).

WHEELER, J. The contention of the appellant has been that upon the facts as they should have been found the court erred. Our study of the evidence has failed to convince us that the court committed error either in finding material and relevant facts contrary to the evidence, or in refusing to find such facts.

The appellant, Mrs. Schutte, was committed to Dr. Givens' sanitarium by order of the Court of Probate for the district of Stamford, pursuant to General Statutes, § 2744. That section gives the Court of Probate for any probate district of this State power to commit, after hearing had, one who is found by it to be (a) a resident of, or domiciled in, the district and (b) an habitual drunkard, upon application by (c) any of his relatives and (d) upon such reasonable notice to the alleged inebriate as it may prescribe.

The appellant attacks this order of commitment because of lack of jurisdiction to issue it upon two

grounds: first, that she was not a resident of the probate district of Stamford, and hence not subject to the jurisdiction of the Court of Probate of that district; and second, that the application upon which the order issued was made by Mr. Mattern, a brother-in-law of the appellant, and not by a brother, as it recites, and because the application was not made by a relative of Mrs. Schutte the Court of Probate was without jurisdiction to issue its order.

The word "relative" or "relatives," when used generically, includes persons connected by ties of affinity as well as consanguinity. Webster's New International Dictionary; Bouvier's Law Dictionary; *Wapello County* v. *Eikelberg*, 140 Iowa, 736, 117 N. W. 978, 979. These words may also be used with a restricted meaning, and when so used, they refer to those only who are connected by ties of consanguinity or blood. It is with this meaning these words are used in a will, unless the contrary appears. There the popular and general meaning is controlled by a technical meaning arising from definite construction. *Bennett* v. *Van Riper*, 47 N. J. Eq. 563, 22 Atl. 1055, 14 L. R. A. 342; *Thompson* v. *Thornton*, 197 Mass. 273, 83 N. E. 880.

The term "any of his relatives," in § 2744, has never been before us for construction. The purpose of the statute is to protect the person and safeguard the rights of the person alleged to be an habitual drunkard, by providing that the application shall be made by one who has a public interest, as a selectman, or by one who has a private interest, as a relative. The degree of the relationship is not specified in the statute. Near relatives by affinity are generally bound by a closer tie of affection to their relative than are his remote relatives by blood. The interest of the relative by affinity may be greater than that of the relative by blood.

Before the order of commitment can issue, the court must find the fact of habitual intemperance, and that service has been made upon the alleged inebriate. The very informality of procedure in our courts of probate will tend to prevent a finding of these jurisdictional facts either ill-advisedly or through the imposition of a relative by affinity.

The court found that Mrs. Schutte was a voluntary resident of Stamford at the time the order of commitment was issued. We cannot say as matter of law that the court erred in making this finding. Shortly after the commitment order, the attorney of Mrs. Schutte procured the appointment of a conservator of her upon the representation that she was a resident of Stamford; and her course of conduct after her commitment recognized and approved of the court's action. The appellees do not and could not properly claim that the bringing of Mrs. Schutte into this State by force or fraud, and the compelling her presence within the State against her will, would have made her a resident of the State and have conferred jurisdiction upon the Court of Probate. The finding not only shows that her residence was a voluntary one, but her conduct subsequent to the commitment also indicates her full acquiescence in the fact of her residence in Stamford.

The order appointing a conservator is attacked for want of jurisdiction in that Mrs. Schutte was not at the time a resident of Stamford. The finding shows the contrary. Further, Mrs. Schutte having invoked the jurisdiction of the Court of Probate upon her representation that she was a resident of Stamford, will not be permitted to deny that jurisdiction because of the claimed untruthfulness of her representations. Mrs. Schutte claims, in addition, that she was capable of managing her affairs when a conservator was appointed. The finding shows the reverse, and we think

the trial court was justified in so finding. The order appointing a conservator was made April 27th, the petition for its revocation was filed the following May 6th. It is not based upon the claim that there had been a change in the condition of Mrs. Schutte, but upon the claim that the order, when made, was erroneous, and based upon facts contrary to the evidence.

The ruling dismissing the appeal was right for another reason. From the original order of commitment and the order appointing a conservator, no appeal was taken. The appeal to the Superior Court which we are considering was from the denial by the Court of Probate of the application to set aside the order of commitment and the order appointing a conservator. The appeal before us is from the judgment of the Superior Court dismissing the appeal from the Court of Probate. The Court of Probate was asked to revoke its own orders previously made and from which no appeal had been taken. If the Court of Probate for the district of Stamford had power to revoke its own orders, upon the facts before it, it could take jurisdiction of the application, otherwise not. Our courts of probate possess such powers only as are expressly or by implication conferred by statute upon them. *Sears* v. *Terry*, 26 Conn. 273, 286. By statute (§ 203) they are given power to "modify or revoke any order or decree made by them *ex parte* before any appeal therefrom." The finding in this case shows that due notice was given of the pendency of the commitment proceedings, and that the conservator proceedings were instituted and conducted by Mrs. Schutte through her agent, and her attorney. Neither order was an *ex parte* one.

The same question was before us in *Delehanty* v. *Pitkin*, 76 Conn. 412, 56 Atl. 881, and we there held (p. 417) that the Court of Probate had no such power, and that any other conclusion would run "counter

to all our legislation and decisions with reference to the powers of that court."

The reasoning of that opinion seems to us sound, and the case must be regarded as authoritative for the proposition that the power of our courts of probate to set aside or modify their own decisions is limited to the instances given by statute; beyond these the Court of Probate cannot go. A final probate decree can be set aside, reversed or modified, only upon appeal duly taken from it. If the lack of jurisdiction appears when it is too late to take an appeal, the judgment will fall when collaterally attacked. If hardship of frequent occurrence result to the innocent from the application of this rule, the legislature "may be trusted to apply some appropriate remedy," as we remarked in *Delehanty* v. *Pitkin*, 76 Conn. 412, 424, 56 Atl. 881. The fact that our statute (§ 194) has remained unchanged for over twelve years since this observation was made, suggests that the instances of hardship either have not occurred, or have not occurred with frequency.

There is no error.

In this opinion PRENTICE, C. J., THAYER and RORABACK, Js., concurred.

BEACH, J. (concurring). I concur in the result, on the ground that the Court of Probate has no power, in the absence of express statutory authority, to revoke its own decrees, and, with some hesitation, in the conclusion that Mrs. Schutte was a resident of Stamford; but I think the latter conclusion ought to be put more emphatically on the ground that she had already evidenced an intention to take up her abode in Dr. Givens' sanitarium for an indefinite time, before the application for her commitment was made.

The statute (§ 2744) limits the jurisdiction in these cases to "the Court of Probate for the district in which he resides, or is domiciled"; and this very properly restricts the inquiry into the habits and reputation of the person whose liberty is at stake, to a district where he may be supposed to be known, and from which it may be assumed that disinterested witnesses may conveniently be summoned.

Since this woman already had her domicil and residence in the State of New York on March 26th, the Court of Probate for the district of Stamford was without jurisdiction in the premises on March 27th, unless she had acquired a new residence in the meantime. This she could not do in twenty-four hours except by forming an intention to remain in Stamford long enough to give her the character of a resident, as distinguished from a transient person; and the only evidence of such an intent in this case is found in her written requests for treatment, which may be supposed to express an intention to remain for an indefinite time for that purpose, when corroborated in that particular by her subsequent conduct.

Residence, as distinguished from domicil, means a temporary residence; but when the word is used as a limitation of jurisdiction, it must also be distinguished from a place in which one is transiently found. In that restricted sense, residence is the place where one has temporarily fixed his abode with an intention to depart, which is definite as to purpose but indefinite as to time. *Brisenden* v. *Chamberlain,* 53 Fed. Rep. 307, 311.