JOHN McMENAMY et al., Executors of Last Will of GEORGE KAUFHOLD, v. MATHIAS KEMPEL-MANN et al., Appellants.

Division Two, February 16, 1918.

1. **APPEAL: From Order Granting New Trial: Appellate Procedure.** If the trial court erroneously granted a new trial, the order granting the same should be reversed, and the cause remanded with directions to the trial court to enter judgment according to the original decree. If, on the other hand, the court did not err in granting a new trial, the proper practice (even in equity suits) is to affirm the order granting the new trial and remand the cause for a re-trial.

2. **WILL: Legacy to Relatives: Does Not Include Wife's Relatives.** Unless the will discloses a plain purpose to the contrary, the term "relatives" when used therein to designate legatees does not prima-facie refer to husband, wife or marriage connections, but only to the maker's own blood kindred.

3. **———: ———: ———: This Case.** The testator's will made gifts to his daughters, nephews, brothers and nieces, some of whom resided in Germany, and to his deceased wife's brother, nephews and nieces and to the wives of some of them, in definite amounts of money, and then said: "If there be any residue left over of my estate after all debts and legacies are settled by the executors of this will, I direct that same be divided amongst all immediate relatives herein named proportionally as to the amounts hereinbefore given, but limited to those relatives in the United States of America." *Held*, that the will does not disclose a plain purpose to include his wife's relatives among the "immediate relatives" to whom the residue was to be divided, and they cannot therefore share in it.

McMenamy v. Kempelmann.

*Held*, by WALKER, P. J., concurring, that the word "relatives" used in the said residuary clause, when read in connection with the express bequests made in other parts of the will, strongly points to the conclusion that the word was used in its generic rather than in its technical sense, and that the testator intended to include both classes of relatives; but the rule seems to be that language more specific than that employed in this clause is necessary to broaden the word to include others than "those who, by virtue of the Statute of Distributions, would take property as next of kin."

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED AND REMANDED.

*Otto F. Karbe, S. C. Rogers, Frank Landwehr* and *F. X. Hiemenz* for appellants.

The court erred in sustaining the motion for a new trial. (a) Because the will itself is sufficiently plain on its face as not to require any extrinsic or explanatory evidence. Kingman v. Winchell, 20 S. W. 296; McQueen v. Lilly, 131 Mo. 17; Meiners v. Meiners, 179 Mo. 614; 40 Cyc. 1431, 1433, 1436. The rule for construction of wills is provided in Sec. 583, R. S. 1909, and a construction of this statute can be found at length in: Cox v. Jones, 229 Mo. 62; Settle v. Schafer, 229 Mo. 568; Griffith v. Witten, 252 Mo. 641; Tevis v. Tevis, 259 Mo. 34; Threckeld v. Threckeld, 238 Mo. 465; Armour v. Frey, 226 Mo. 666; Thomas v. Thomas, 149 Mo. 435; Noe v. Kern, 93 Mo. 373; Suydan v. Thayer, 94 Mo. 49; Munro v. Collins, 95 Mo. 33; Grace v. Perry, 197 Mo. 559; Board of Trustees v. May, 201 Mo. 369; Stewart v. Jones, 219 Mo. 639; Cornet v. Cornet, 248 Mo. 215; Burnett v. Burnett, 244 Mo. 491; 40 Cyc. 1439. (b) Because a will must be construed from the standpoint of the testator and technical rules must yield to obvious intent of the testator. O'Day v. O'Day, 193 Mo. 87; Gross v. Hoch, 149 Mo. 325; Small v. Field, 102 Mo. 122; Roberts v. Crume, 173 Mo. 579; Hurst v. Von De Veld, 158 Mo. 248; Willard v. Darrah, 168 Mo. 667; Buckner v. Buckner, 255 Mo. 375; Seibert v.

Hatcher, 205 Mo. 89; Warne v. Sorge, 258 Mo. 167; Grace v. Perry, 197 Mo. 559; Mead v. Jennings, 46 Mo. 93; In re Holmes, 1 Drew, 321; Landon v. Moore, 45 Conn. 422; Thurber v. Chambers, 66 N. Y. 42.

*Marshall & Henderson* and *William McNamee* for respondents.

"The plaintiffs contend that the testator by the use of the words "immediate relatives" in the residuary clause of his will meant his blood kin. (1) The terms relatives, relation, kinsman, have a definite meaning in the law. A "relative" is a person connected by blood or affinity; strictly, one allied by blood; a relation; a kinsman or kinswoman. Webster's International Dictionary. A relative or relation is, "in construction of wills, one connected with the testator by blood; a blood relation; next of kin." 34 Cyc. 1037; Elliot v. Fessenden, 83 Me. 205; Kenniston v. Adams, 80 Me. 294; Drew v. Wakefield, 54 Me. 298; Thompson v. Thornton, 197 Mass. 276; Snow v. Durgin, 70 N. H. 122; Gallagher v. Croaks, 132 N. Y. 343; McNeilledge v. Barclay, 11 Serg. & R. (Pa.) 106; Corn v. Matz, 17 Pa. Co. Ct. 543; Hibbert v. Hibbert, L. R. 15 Eq. 375; Green v. Howard, 1 Bro. Ch. 33; Pope v. Whitcombe, 3 Merio, 689; Smith v. Campbell, 19 Ves. Jr., 403. In connection with wills and statutes relating thereto the terms have been held not to include marriage connections. Bramell v. Adams, 146 Mo. 89; In re Pfuelb, 48 Cal. 644; Staff v. McGinn, 178 Ill. 46-53; Horton v. Earle, 162 Mass. 450; Kimball v. Story, 108 Mass. 385; Bennett v. Van Riper, 47 N. J. Eq. 565; Supreme Council, Etc., v. Bennett, 47 N. J. Eq. 43; Cleaver v. Cleaver, 36 Wis. 100; 2 Woerner's Law of Admn., p. 939. "Relations," according to 2 Bouvier's Law Dictionary, 864, is "a term which, in its widest sense, includes all the kindred of the person spoken of." (e) It has long been settled that in the construction of wills it includes those persons who are entitled as next of kin under the Statute of Distributions. 2 Jarm. Wills, 661; 54 Me. 291; 132 N. Y. 338.

In the interpretation of a statute, the term was held not to include a stepson (108 Mass. 382), or a wife (101 Mass. 36; 10 Wash. 533), or a brother-in-law (162 Mass. 448). A legacy to "relations" generally, or to "relations by blood or marriage" without enumerating any of them will, therefore, entitle to a share such of the testator's relatives as would be entitled under the Statute of Distributions in the event of intestacy (1 Dodd, 45; 1 Bro. C. C. 33). The same rule extends to devises of real estate (1 Taunt. 263). (2) The testator did not intend that his wife's relations should share equally with his blood kin in the residuum. The specific legacies exclude any such idea. The oral testimony shows affirmatively and without contradiction that the testator told one of the executors (Mr. McMenamy) that he did not want his wife's relatives to share in the residuum and was advised by such executor that the twenty-ninth clause of the will would not give them such a right.

WILLIAMS, J.—This is a suit in equity whereby the executors of the will of George Kaufhold, deceased, seek to have said will, and more particularly paragraph 29 (the residuary clause) thereof, construed.

Trial was had in the circuit court of the City of St. Louis, which resulted in a decree construing said clause to include within its provisions the legatees who were the blood relatives of the deceased wife of the testator, as well as the legatees, residing within the United States, who were the blood relatives of the testator.

Thereupon motions for a new trial were filed on behalf of the executors and some of the legatees who were the blood relatives of the testator.

The several motions for a new trial were sustained and thereupon the legatees, who were the relatives of the deceased wife of the testator, duly appealed from the order granting a new trial. It is contended by all the parties that the amount in dispute is more than $7500 and therefore sufficient to confer jurisdiction of the appeal here.

In order that the clause sought to be construed may be seen in its true setting it is necessary that the will be copied herein. We have underscored paragraph 29, the one to be construed. The will is as follows:

"St. Louis, Mo., April 26, 1904.
"In the name of God, Amen.

."I George Kaufhold of the city of St. Louis and State of Missouri being of sound and disposing mind do make, publish and declare this to be my last will and testament.

"My estate consists of the following real estate, namely: Being the eastern fifty-five feet seven and one-sixth inches more or less, of Lot Three and all of Lot Four in Block Five of D. D. Page's Western Addition, in City Block 1860, of the said city of St. Louis, State of Missouri, having an aggregate front of one hundred and sixty-six feet nine and one-sixth inches more or less on the north line of Easton Avenue, and a depth of one hundred and eighty-nine feet ten inches on the west side of Francis Street, and one hundred and fifty feet more or less on the south side of Evans Avenue, and bounded as follows to-wit: On the north by Evans Avenue, on the east by Francis Street, on the south by Easton Avenue and on the west by property now or formerly of C. S. Luttercord.

"I own personal property, .viz: Forty-seven and one-half shares of stock in the German American Literary Society, and also one share in the Herald of Religious Belief (a newspaper), also twenty-one shares in the St. Louis Vitrified Fire Brick Company of St. Louis, Missouri.

"First: I direct that all my just debts, if any I have at the time of my decease, shall be paid by my executors.

"Second: I do make, constitute and appoint my friend John McMenamy of the city of St. Louis, State of Missouri, and Frederick Kaufhold of the city of St. Louis and State of Missouri, executors, of this my last will and testament, and I direct that they shall not be

required to give bond before administering on said estate.

"Third: I direct that the executors hereinbefore named shall take charge of the said real estate above mentioned and described, and for the purpose of paying the legacies and shall sell same at as early a date as convenient after my death, as will not prove injurious to said real estate; they are to collect the rents of said real estate until so sold, and make such disposition by sale or otherwise of the stock above mentioned as will prove most advantageous. The executors to act solely as they may deem best for the interest of my estate, and by no means to dispose of this stock at a sacrifice or force the same upon the market.

"Fourth: I give, devise and bequeath to the two daughters, Roselia Wagner (*nee* Kaufhold) and Barbara Kirchner (*nee* Kaufhold) being daughters of Henry Kaufhold deceased, my brother, the sum of one thousand dollars each.

"Fifth: To George Kaufhold the son of my brother Francis Joseph. Kaufhold in Germany, I give, devise and bequeath the sum of one thousand dollars.

"To my brother Francis Joseph Kaufhold (if living), I give, devise and bequeath the sum of one thousand dollars.

"Sixth: I give, devise and bequeath to two children of Martha E. Gluth (*nee* Kaufhold) of Germany (Joseph Gluth and Martha E. Gluth) the sum of twelve hundred and fifty dollars each.

"Seventh: I give, devise and bequeath to Mary Antrup (*nee* Koch) and Margaret Roche (*nee* Koch) and Jacob Koch of Vandalia, Illinois, children of my sister Mrs. Anna Mary Koch, wife of Christopher Koch, each the sum of five hundred dollars.

"Eighth: I give, devise and bequeath to Mathias Kampelmann and Theresa Kampelmann his wife, the said Mathias Kampelmann being half brother of my late wife, the sum of one thousand dollars.

"Ninth: I give, devise and bequeath to George Kampelmann, son of Mathias Kampelmann, the sum one thousand dollars.

"Tenth: I give, devise and bequeath to Lizzie Kampelmann now Mrs. Sueme, wife of Joseph Sueme, the sum of eight hundred and fifty dollars.

"Eleventh: I give, devise and bequeath to Sophia Kampelmann, daughter of Mathias Kampelmann, the sum of five hundred dollars.

"Twelfth: I give, devise and bequeath to Fredericka Kampelmann, wife of Henry Kampelmann, two hundred and fifty dollars.

"Thirteenth: I give, devise and bequeath to Mrs. Minnie Junior, daughter of said Henry Kampelmann, the sum of two hundred and fifty dollars.

"Fourteenth: I give, devise and bequeath to Adolph Kampelmann, a son of Henry Kampelmann aforesaid, the sum of two hundred and fifteen dollars.

"Fifteenth: I give, devise and bequeath to Bertha Kampelmann, wife of Anton Kampelmann, half brother of my late wife, the sum of four hundred dollars.

"Sixteenth: I give, devise and bequeath to John Kampelmann, Theresa Kampelmann, Sophia Kampelmann, Frederick Kampelmann and Louis Kampelmann, children of Anton Kampelmann, the sum of four hundred dollars each.

"Seventeenth: I give, devise and bequeath to John Kampelmann, Kate Kampelmann and Sophia Lorent, children of Henry Kampelmann, half brother of my late wife, each the sum of four hundred dollars.

"Eighteenth: I give, devise and bequeath to my friend John McMenamy, the sum of five hundred dollars, for services, to be rendered for an unremunerative character during my lifetime.

"Nineteenth: I give, devise and bequeath to Frederick Kaufhold, son of my late brother Henry Kaufhold, St. Louis, Missouri, the sum of one thousand dollars.

"Twentieth: I give, devise and bequeath to Dorathea Schollmeier (*nee* Kaufhold), daughter of my

brother Henry Kaufhold deceased of Germany, the sum of one thousand dollars.

"Twenty-first: I give, devise and bequeath to Caroline Keilholz (*nee* Roche), my niece, and daughter of John Roche, the sum of two hundred and fifty dollars.

"Twenty-second: I give, devise and bequeath to Sister Anna Roche, known in the religious world as Sister M. Aurelia, of the order of the Precious Blood, being a sister of Caroline Keilholz, the sum of fifteen hundred dollars.

"Twenty-third: I give, devise and bequeath to the Kenrick Seminary of St. Louis, Missouri, the sum of one thousand dollars.

"Twenty-fourth: I give, devise and bequeath to the Order of Sisterhood managing the institution known as the Good Shepherd Convent, St. Louis, Missouri, the sum of five hundred dollars to be expended by them for the benefit of the institution or its inmates as they may deem best.

"Twenty-fifth: I give, devise and bequeath to the St. Vincent German Catholic Orphan Asylum, the sum of one thousand dollars.

"Twenty-sixth: I give, devise and bequeath to the Order of the Carmelite Nuns of St. Louis, the sum of five hundred dollars.

"Twenty-seventh: I give, devise and bequeath to the Oblate Sisterhood, having in charge the Colored orphans at Normandy, St. Louis County, Missouri, the sum of five hundred dollars, to be used for the benefit of said orphans.

"Twenty-eighth: I give, devise and bequeath to the Order of the Little Sister of the Poor, St. Louis, Missouri, the sum of five hundred dollars.

"*Twenty-ninth: If there should be a residue left over in my estate after all debts and legacies are settled by the executors of this will, I direct that same shall be divided amongst all immediate relatives herein named proportionately as to the amounts herein-*

*before given, but limited to those relatives residing in United States of America.*

"Thirtieth: I give, devise and bequeath all my household and kitchen furniture of whatsoever character contained in my late residence, to my executors, and they are to give and parsel the same to my immediate relatives as they may deem proper, and their decision in this particular respect shall be final.

"Thirty-first: I give, devise and bequeath to Lena Fohr the sum of two thousand and five hundred dollars. This sum is a recompense for the faithful performance of work by said Lena Fohr as a servant in my house, and as a token of my appreciation of her kindness to my late wife during her lifetime. This allowance, though much larger than any claim due her in full for all services, and her acceptance of such sum from my executors, shall be deemed a waiver of all or any other claims from my estate and to be considered payment in full to date.

"Thirty-second: I give, devise and bequeath to Mathias Kampelmann the east part of my lot in Calvary Cemetery, being in Section twelve of said lot one hundred and forty-eight, and I desire that my executors carry out the intentions as expressed in this will, with as little delay as may be.

"In testimony of all of the above and foregoing I have hereunto set my hand and seal this ninth day of May, A. D. 1904, in the presence of Frank J. Weber and Henry W. Berger, who in my presence and in the presence of each other have attested this will by subscribing their names thereto as Witnesses.

                    GEO. KAUFHOLD      SEAL"

The will was properly witnessed, and was on January 9, 1908, duly admitted to probate.

Oral testimony admitted upon the trial without objection was to the following effect:

On behalf of respondents, John McMenamy, one of the executors, testified that he acted as testator's real estate agent for thirty years, and that fifteen days before the testator executed the will the testator had pre-

pared the will and handed it to the witness and asked him if he were sure that none of his (testator's) wife's relatives would come in for any part of the residuary; that he had given them considerable and did not want to give them any more. Witness told him that the term "immediate relatives" meant blood relatives of the testator; that after considerable discussion on the point, during the intervening fifteen days, the will was executed by the testator.

On behalf of the wife's relatives, Theresa Kampelmann, one of the legatees, testified that about fourteen days after the death of testator's wife, the witness told testator that she had heard he was going to leave all his property to Frederick Kaufhold and that testator replied: "Don't you believe it; they get nothing more than you, but he can get no more than you."

Appellants also introduced in evidence the will of testator's wife whereby she devised all of her property to testator.

Did the learned chancellor err in granting a new trial herein? That is the question for determination. If the court did erroneously grant a new trial then the order granting a new trial should be reversed and the cause remanded with directions to enter up judgment as per the original decree. If on the other hand it should be determined that the court did not err in granting a new trial, it would appear that the proper practice in such matters (even in equity suits) would require that the order granting the new trial be affirmed and the cause remanded for a re-trial. [Hurley v. Kennally, 186 Mo. 225, l. c. 228-9.]

Upon careful consideration, we are of the opinion that the trial court erred in decreeing that paragraph twenty-nine included within its provisions the legatees who were the blood relatives of the testator's wife. That being true the court did not err in granting a new trial.

The rule here applicable and which appears to be sanctioned by the overwhelming weight of authority is to the effect that "unless the will disclose a plain purpose to the contrary" the term "relatives" when used

therein "does not prima-facie refer to husband, wife or
marriage connections, but to those only of one's own
blood." [Schouler on Wills (5 Ed.), par. 537, and cases
therein cited; 2 Jarman on Wills (6 Ed.), page 1633;
2 Woerner's Law of Administration (2 Ed.), pages 987-
988; 34 Cyc. 1037, and cases therein cited.] As we under-
stand the contention of appellants they do not under-
take to deny the correctness of the above rule, but under-
take to avoid its application by saying that from the
terms of the will itself it appears that testator intended
to include within the scope of said residuary clause those
blood relatives of the wife who are named in the will.

We are unable to agree with this contention. It
will be noticed that the above rule applies *"unless the
will disclose a plain purpose to the contrary."* We have
read the will here sought to be construed many times and
have given the same very careful consideration, but we
are unable to gather therefrom any language or inference
which would indicate a *plain purpose* to include within
the bounty of said clause the relatives of the testator by
affinity. We must confess that the rather ingenious
argument made in their brief by the learned counsel for
the appellants does in a way tend to create a suspicion
that the testator may have intended to include more
than this own named blood relatives in said clause, but
after all it is nothing more than a suspicion and mere
suspicion cannot be said to be tantamount to the show-
ing of a *plain purpose* as required by the rule.

One of the very early cases (Maitland v. Adair, 3
Ves. 230, decided in 1796 and cited by some of the learn-
ed text-writers above), dealt with a situation very analo-
gous to the case at bar. In that case the testator gave
legacies to many of his blood relatives by name. He
also gave a legacy to his brother-in-law. A codicil to
the will contained a residuary clause as follows: "My
will and intention is that whatever money, over and
above what I have already bequeathed, I may be pos-
sessed of at my death, may be divided among my said
relations by my executors, in the proportion I have be-
queathed the other part of my fortune." The Lord

Chancellor in deciding the case held that the brother-in-law was not included within the terms of the residuary clause and that the word relations used therein did not include those by affinity.

We therefore conclude that the order granting a new trial should be affirmed and that the cause should be remanded.

It is so ordered. All concur; *Walker, P. J.*, in separate opinion.

WALKER, P. J. (concurring)—I concur somewhat reluctantly with the conclusion reached in the majority opinion. That the trend of authority sustains the rule that the law favors blood in bequests of real property I do not question. Many cases sustain this doctrine, which applies with equal force to other portions of wills as well as to the use of the word relatives here under review. [Thompson v. Thornton, 197 Mass. 273; Wapello County v. Eikelberg, 140 Iowa, 736] There is, however, a well defined exception to this canon of construction to which another equally well established rule may be applied and that is, that a will should, in harmony with a reasonable interpretation of the language employed, be construed according to the purpose and intention of the testator. Applied here, and reading the word relatives as used in the twenty-ninth paragraph in connection with the express bequests made in other parts of the will, which include not only relatives by blood but those by affinity as well, the conclusion is not unreasonable that it was in its generic rather than its technical sense that the word was employed. [De Graffenreid v. Iowa L. & T. Co., 20 Okla. 687, 95 Pac. 624; Drew v. Wakefield, 54 Me. 1. c. 294.] If left, therefore, to the language of the will itself, we would be strongly inclined, despite the current of authority elsewhere, to hold that the testator meant to use the word in the broader sense of a layman rather than in the technical one of a lawyer and to include both classes of relatives. However, our own court has ruled upon this question in Bramell v. Adams, 146 Mo. 70, 89, and while the terms

of the will there were not as general as in the case at bar, the court held explicitly that "it has long been settled that a bequest to 'relations' applies only to those who, by virtue of the Statute of Distributions, would take property as next of kin." From this it appears that language more specific than that employed by the testator is necessary to broaden the use of the word beyond the restrictions of the general rule. We therefore concur.